## Nelson W. Clark and another v. Henry T. West.

*Cross-replevin: Former judgment reversed.* In an action of replevin brought by
W against B and C, where it appeared that C had before replevied the same
property from W in a justice's court, and judgment had been rendered by
such justice in favor of W for a return of the property; that after C had given
notice to the justice of his intention to remove the cause by *certiorari* to the
circuit court, and within four days after the judgment the justice issued his
precept for the return of the property to W, which was executed the same
day; that on the next day the writ of *certiorari* for removing the cause to the
circuit court, pursuant to the notice before given, was served on the justice;
that on the following day B, at the request of C, served upon W a notice of
the removal of said cause and a demand for possession of the property, and
thereupon obtained peaceable possession thereof and delivered the same to C;
and that subsequently, and on the same 'day, while said property continued in
the peaceable possession of C, the writ in the present cause was sued out and
the property taken upon it and delivered to W,—it was competent to show
that the property originally belonged to C and was taken by W from his
possession in his absence and without his knowledge or consent, and that the
judgment in said prior cause had been reversed upon said writ of *certiorari*.

*Replevin: Possession pending suit.* Any thing going to show that the plaintiff in
replevin had no right to the possession when he commenced his suit is a com-
plete bar to the action.—*Belden v. Laing, 8 Mich., 500.* By force of the first
writ of replevin, C became entitled, as against W, to the possession during
the pendency of that suit, and, without questioning the regularity of the precept
for return and its execution after notice of the plaintiff's intention to remove
the cause and before the expiration of five days after judgment, C had the
right as against W, during the pendency of the first suit, to retain the posses-
sion which he had peaceably acquired, after completing the remaining steps
required by law for the removal of the cause.   The completion of the proceed-
ings for said removal suspended the further operation of the judgment of the
justice and left the writ by which the suit was commenced in legal force, and
W was no longer in a situation to assert any right to possession by force of
said judgment or of the precept for return founded upon it.

*Relation: Plea puis darrein continuance, when unnecessary.* The first act for the
removal of the cause having been performed before the precept for a return was
issued, the doctrine of relation afforded protection to C's possession subse-
quently acquired, against the pretensions of W, based upon said judgment.
For that purpose the subsequent steps for the removal of the cause, as well as
the judgment of reversal upon the writ of *certiorari*, related back to the time of
the notice which constituted the first step in the proceedings for such removal;
and although said judgment of reversal was rendered after the last continuance
of this cause, no plea *puis darrein continuance* was necessary.

*Heard May 9.   Decided July 7.*

Error to Oakland Circuit.
The facts are fully stated in the opinion.

*O. F. Wisner,* for plaintiffs in error.

The judgment relied upon by the plaintiff having been removed by *certiorari,* it was vacated, and was of no efficacy whatever as a judgment of the justice, while the proceedings to reverse it were pending. No action could be maintained upon it.—*Howard v. Rockwell, 1 Doug., 315; Campbell v. Howard, 5 Mass., 376; Bassett v. Daniels, 10 Ohio (N. S.), 617; Atkins v. Wyman, 45 Me., 399.* If I am right in this, then the court below erred in rejecting the proposed evidence.

The court erred in refusing to allow the witness to answer the question—" Whose property was this heifer at the time this suit was commenced?" This was ruled out because *incompetent.* Instead of its being incompetent, it appears to me to be not only competent, but the most proper subject of inquiry in an action of replevin.

*W. B. Jackson* and *Charles Draper,* for defendant in error.

The only question in this case is this: Was it competent for the plaintiffs in error to show that the judgment had been reversed on *certiorari* since the last continuance of this case? We submit that such proof was not competent under the pleadings in this case. "Evidence cannot be given of matter arising after the commencement of the action, whether it occurred before or after plea pleaded, unless the foundation be laid by proper pleadings."—*Allen v. Newberry, 3 Clark (Iowa), 65; Colden v. Rich, 7 Johns., 194; Cowell v. Weston, 20 Johns., 414; Jackson v. McCall, 3 Cowen, 75; Langworth v. Flagg, 10 Ohio, 300; Green's Pr., 334; 1 Burrell's Pr., 423; 1 Chitty's Pl., 658.*

GRAVES, J.

A clear understanding of the point raised by this record requires a somewhat extended statement of the material

circumstances connected with the case, and their dates, as we gather them from the bill of exceptions.

In April, 1870, Clark, one of the plaintiffs in error, commenced a suit in replevin, against West, for a heifer, before John H. Dresser, a justice of the peace, and the animal was taken upon the writ and delivered to Clark, and on the 21st of May, thereafter, judgment was given by the justice in favor of West, the then defendant, and return of the property ordered. On the 23d of the same month, Clark gave notice to the justice of his intention of removing the cause, by *certiorari*, to the circuit court, and on the next day and within four days after the judgment, the justice issued his precept for the return of the property to West, pursuant to the judgment, and it was executed on the same day. On the next day, and within five days after the rendition of the judgment, and one day after the property was returned to West under the precept therefor, the *certiorari* for removing the cause to the circuit court, pursuant to the notice before given, was served by Clark upon the justice. And on the succeeding day Clark caused a writing to be served on West, by Brown, the other plaintiff in error, in which he notified West of the removal of the cause, and also demanded possession of the heifer. It appears from West's evidence, that on being served with this paper, he informed Brown that the heifer was in his stable, and that Brown then took her from thence and put her into Clark's possession. This taking appears to have been peaceable and without objection on the part of West, although, according to the evidence of the latter, it was without his consent. The possession of the animal was thus peaceably restored to Clark, as plaintiff in the then pending replevin suit, after the proceedings for the removal of the cause were perfected. After these events and on the same day of this reprisal, and while the possession so

obtained was peaceably held by Clark, West brought replevin for the heifer against Clark and Brown, the plaintiffs in error, before George Robertson, a justice of the peace, and the animal was thereupon taken on that writ from Clark and delivered to West, and on the 15th of June following, Justice Robertson gave judgment for West in such second suit, and Clark appealed. During the pendency of this appeal, and on the 27th of October, 1870, the circuit court considered the first case on the *certiorari* and reversed the judgment which Justice Dresser had rendered against Clark.

In the November following, the second case upon appeal from the judgment of Justice Robertson came on to be tried in the circuit court before a jury, when West, the plaintiff therein, gave in evidence the proceedings in the first case before Justice Dresser, including the judgment for return, upon which he relied, the notice to the justice of Clark's intention to remove the cause, the precept for the return of the property, the return of the officer showing its execution and the writing served by Brown. He further gave in evidence the circumstances attending the service of this writing, the taking of the heifer by Brown, her delivery by Brown to Clark, and her value, and that Brown acted by direction of Clark. Having shown these facts, West rested his case.

Clark was then sworn as a witness for himself and his co-defendant, and his counsel asked him this question: "Whose heifer is that?" which was excluded, upon the ground that the judgment of Justice Dresser, in the first suit, was conclusive evidence of title in West. The counsel for Clark and Brown then offered to show that the heifer originally belonged to Clark; that she was taken in his absence from his possession, and without his knowledge or consent, by West; that he, Clark, thereupon commenced the first suit in replevin; that Justice Dresser rendered judgment against

him; that he then removed the cause to the circuit court by *certiorari*, which was pending when the present suit was commenced; and that the judgment of Justice Dresser had been reversed during the pendency of the appeal in this case. This offer, as to all except the judgment of reversal, was refused, on the ground that the judgment of Justice Dresser for a return of the property was conclusive, and was executed by means of the precept issued upon it, before the service of the *certiorari* upon the justice; and as to the judgment of reversal, it was refused upon the further ground that the judgment on *certiorari* was rendered after the last continuance of the case on trial, and could not be admitted without a plea *puis darrein continuance*. The cause was then submitted to the jury, who returned a verdict for West, upon which judgment was entered. The rejection of the offer of evidence of Clark's original right to the heifer was a consequence of the opinion that what had been done in the first replevin suit had the effect to establish West's right, as against the plaintiffs in error, in the second suit. If that opinion was incorrect, and the effect of the events that happened was to leave the opposing claims of the parties to the property open to contest in the second suit, in the same manner as though no litigation had taken place, then, of course, the exclusion of evidence of Clark's original right was erroneous; and, on the other hand, if the effect of those events was to support Clark's right of possession during the pendency of the first suit, then evidence of Clark's original right was relevant and admissible as one ground of defense before the jury, even though in strictness it was unnecessary for the purpose of defeating West in the second suit. If the court had felt and declared the opinion, that, under the circumstances, the right of Clark to possession, at the time of the commencement of the second suit, was conclusively established by the

proceedings in the first suit and the connected facts, and had, in consequence of such opinion and direction, excluded evidence of Clark's original right as superfluous, a different question would have been presented.

The rejection of the offer of evidence as to Clark's possession at the commencement of the second.suit, and of evidence relating to proceedings in, and about, the first suit, including the reversal of the first judgment against Clark, was erroneous. In *Belden v. Laing, 8 Mich., 500,* which was also a case of cross-replevin, it was declared "that the object of our statutory replevin is to determine the right of possession at the commencement of the action, as well as title to the property for temporary or permanent purposes connected with that possession. Any thing going to show that the plaintiff in replevin had no right to the possession when he commenced his suit, is a complete bar to the action. And proof that a sheriff had taken property on a lawful writ from the plaintiff, and continued lawfully to hold it under that writ when replevin was brought, would go to negative the plaintiff's right of possession, and of course defeat his suit." To this view we adhere. If the facts offered to be proved by Clark had been satisfactorily shown, the evidence would have brought the defense within the principle here stated. It is true that the judgment in the first replevin had passed against Clark in the primary court, where a return had been awarded. It is also true that after Clark had taken the first step to remove the cause, and before the *certiorari* had been issued, a precept for the return of the property to West had been issued and executed. But after the proceedings for removing the cause were perfected and complete, the possession was peaceably regained by Clark and held by him as plaintiff in the first suit. He was, therefore, in the actual possession as plaintiff in the suit then pending; a possession which he had avowedly taken as such plaintiff,

and without violence, and, so far as appears, without objection.

By force of the first writ of replevin, and the proceedings had under it, Clark became entitled, as against West, to the possession *during the pendency of that suit,* subject only to such possible interruption, by the service of a precept for return, as actually occurred. As this court has said, the *primary object* of our action of replevin " *is to enable the plaintiff to obtain the actual possession of property wrongfully detained from him by the defendant, at the time the action is brought."*— *Hickey v. Hinsdale, 12 Mich., 99.* But it is claimed that the judgment of Justice Dresser awarding return to West, and the execution of that judgment before service of the *certiorari,* so worked upon the right of possession as to cut off any further right to it in Clark, during the pendency of that suit. If this position is correct, then, in the majority of cases in replevin, where the defendant succeeds before the justice, what this court has stated to be the "primary object" of the suit may be defeated by rapid proceedings for return of the property by the defendant and the justice. But without here questioning the regularity of the precept for return and its execution after notice of the plaintiff's intention to remove the cause, and before the expiration of five days after judgment, it cannot be doubted that Clark had the right, as against West during the pendency of the first suit, to retain the possession which he had peaceably acquired, after completing the remaining steps required by law for the removal of the cause. The completion of the proceedings for such removal suspended the further operation of the judgment of the justice, and left the writ, by which the suit was commenced, in legal force; and Clark was at liberty thereafter to regain possession by his own act, if he could do so peaceably and without personal

interference. And if it be conceded that he had no other remedy for regaining possession before the case was brought to an end, it is certain that West was no longer in a situation to assert any right to possession by force of the judgment of the justice, or of the precept for return founded upon it. As already stated, Clark had performed the first act for the removal of the cause before the precept for a return was issued. To accord protection to his possession subsequently acquired, against the pretensions of West, based upon the judgment of the justice, we have only to apply the doctrine of relation. That doctrine is thus laid down: "Where there are diverse acts concurrent to make a conveyance, estate, or other thing, the original act shall be preferred; and to this the other act shall have relation."— *Vin. Ab. Tit. "Relation," 290.* This fiction is often resorted to in order that justice may not be disappointed, nor its administration thwarted, by formal but incongruous proceedings. A few instances of its application will sufficiently illustrate its use and show its relevancy here.

In *Whipple v. Farrar, 3 Mich., 436,* it was held that a sheriff's deed should relate back to the levy for certain purposes. In *Landes v. Brant, 10 How., 348,* which was ejectment, the land in controversy was in the territory acquired by the Louisiana purchase, and was the subject of a claim, in 1805, by one Clamorgan before the commissioners for the determination of such claims, and which claim was by them confirmed in 1811. Clamorgan died in 1814. In 1845 the government issued a patent to his heirs under the act of 1836. While the claim was pending before the commissioners and before they confirmed it, his right was sold on execution, according to the laws of Missouri then in force. Brant claimed title under this sale. Clamorgan, dying after the sheriff's sale and also after confirma-

23 MICH.—32.

tion by the commissioners, but before the emanation of the patent, by his last will devised the land to his illegitimate children, and Landes claimed title under them and maintained that the patent enured to the benefit of that title.    The court held that the confirmation by the commissioners in 1811, and the patent of 1845, must be taken to relate back to the first act, that of filing the claim in 1805, and enure to the benefit of those deriving title under the sale on execution.    In *Murdock v. Trustees of Phillips' Academy, 12 Pick., 244,* assumpsit was brought by Murdock to recover his salary as professor in the academy. It appeared that in November, 1827, the trustees had voted to remove Murdock, and declared that his duties should be suspended while the question of his removal should be pending.    Murdock appealed to the board of visitors, who, in October, 1828, affirmed the decision of the trustees.    He then appealed to the supreme court, where, in 1829, the decree of the visitors was affirmed.    Murdock claimed to recover his salary from the time of the decision by the trustees to the time when judgment was given by the supreme court.    But it was held that the determination by the supreme court related back to the decree of the visitors, which was the first regular judicial action for removal, and excluded any right to compensation subsequent to that time.

In *Jackson ex dem. De Forest & McMichael v. Ramsay, 3 Cow., 75,* which was ejectment, the plaintiff claimed as devisee in the will of A. M. McMichael, dated April 17, 1818.    The testator died seized, shortly after the will was made.    The defendant derived title through execution sales made after the testator's death, to satisfy judgments recovered against him in his lifetime.    But the sheriff's deeds were made many years after the testator's death and after

the ejectment suit was set down for trial, which was in 1823. The plaintiff objected to the introduction of the deeds in evidence, because they were not made until after issue, and insisted that they were certainly inadmissible without plea *puis darrein continuance.* But the court held that the deeds related back to the sales in 1818, and showed a completion of title before the ejectment was commenced, and were therefore admissible under the original issue. The exposition of the doctrine furnished by these cases is sufficiently in point for the purpose of the present case.

Clark having given notice to the justice, as required by law, of his intention to remove the cause, before process issued to restore possession to West, and having thereupon completed the proceedings for such removal, and then, as plaintiff in the case thus pending, having by his own act, openly and peaceably, after demand, and without any deceptive or clandestine practice, regained possession before the present suit was commenced, the steps for the removal of the cause, taken after the notice given to the justice, as likewise the judgment of reversal, related back to the time of such notice, for the purpose of protecting Clark's possession, against the claim of West based on the judgment of Justice Dresser, and no plea *puis darrein* was needed.

If the evidence relating to the first suit, which plaintiff in error offered, had been allowed, it would have shown that when West commenced the second suit Clark was entitled to the possession as against him, and consequently it would have afforded a perfect defense to Clark and Brown on that trial. The judgment for return in the first case, upon which West appears to have wholly relied as a ground of recovery by himself and as precluding any defense by Clark and Brown founded upon Clark's original property right, had been reversed upon *certiorari;* and this reversal, so far as necessary to protect Clark as plaintiff in the first suit, in

his possession against the claim of West in the second suit, related back to the time of the notice by Clark to the justice of his intention to remove the cause. The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.