## Nathan H. Cary v. Thomas L. Hewitt and another.

*Replevin.*  According to the general nature of replevin, the state of things exist-
ing when the suit is commenced, will ordinarily control the determination;
and this rule must always prevail, unless very peculiar and unusual reasons
exist to prevent it.

*Chattel mortgage: Mortgagor's interest: Execution: Levy.*  The fact that a chat-
tel mortgage is past due and unpaid, when it is not actually foreclosed and
the chattels remain in the mortgagor's possession, does not prevent a levy

under the statute (*Sess. L. 1861, p. 451*), upon the interest of the mortgagor in the chattels mortgaged; the mortgagor has a redeemable interest until actual foreclosure, which is leviable, and the purchaser on the execution sale could acquire the right of the mortgagor by payment or tender before foreclosure.

*Mortgaged chattels: Execution: Right of possession.*  The officer levying an execution upon the mortgagor's interest in mortgaged chattels, has a right to take possession of the chattels from the mortgagor, and to detain them in safe and convenient custody, as against even the mortgagee, for the time prescribed by law for bringing them to sale on the execution, notwithstanding the mortgage is past due.

*Chattel mortgage: Mortgagee: Execution: Replevin.*  A mortgagee of chattels, whose mortgage is past due and unpaid but not foreclosed, cannot maintain replevin against an officer who has taken the mortgaged chattels on an execution against the mortgagor, and is proceeding lawfully to the sale of the same, within the time prescribed by law for bringing them to sale on the execution.

*Replevin: Sale of goods after taken on the writ.*  The fact that the mortgagee, after bringing such replevin suit against such officer and the execution creditor and obtaining possession of the chattels upon his writ, has sold the same under the power of sale in his mortgage and that such execution creditor has become the purchaser, at whatever price it may have been, is immaterial and cannot influence the result of the suit.

*Replevin: Special property: Measure of damages: Statute construed.*  Such a sale would not convey to the purchaser, or invest him with, the special property acquired by the levy, but only the separate interest represented by the mortgage; and the rights of the defendants in such replevin suit, resting on the special interest represented by the levy, underwent no change by virtue of such sale; it could not, therefore, affect the measure of damages under our statute regulating the judgment in case of separate interests in replevin cases.

*Heard October 29.    Decided November 23.*

Case made from Washtenaw Circuit.

*C. D. Colman*, for plaintiff.

*Lawrence & Frazer*, for defendants.

GRAVES, J.

The plaintiff in error brought replevin in the court below against the defendants in error, and the court, assuming to be governed by *Section 5033, Comp. L.*, as amended in 1865 (*Sess. L. 1865, p. 325*), awarded judgment for a specific sum to the defendants. This statute is contained in the chapter regulating the action of replevin, and is as follows:

"When either of the parties to an action of replevin, *at the time of the commencement of the suit,* shall have only

a lien upon, or special property or part ownership in, the goods and chattels described in the writ, and is not the general owner thereof, that fact may· be proved on *the trial,* or on the *assessment of value,* or on the assessment of *damages,* in *all cases arising* under *this chapter;* and the *finding* of the jury, or *court,* as the case may be, *shall be according to such fact,* and the court shall thereupon render such judgment as shall be just between the parties."

The case before us was tried without a jury, and it appears from the findings, that on the 22d day of November, 1870, the chattels in question, being a horse, wagon and harness, were in the actual possession of Kauffman and Rosbach, but subject to a mortgage which they had given to the plaintiff Cary, on the 18th of July, 1870, for one hundred and fifty dollars, payable with interest, on or before the first day of August, 1870, and on which twenty-five dollars had been paid at a time not found;

That defendant Kitson, in October, 1870, obtained judgment against the mortgagors, for damages, one hundred and fifty-three dollars and fifty cents, and costs, three dollars, and took out execution thereon and caused it to be levied by defendant Hewitt, who was a constable, on the mortgaged property, on said 22d day of November; that Hewitt, pursuant to the levy, took the chattels from the mortgagors, the execution debtors, on the same day, and placed them in the custody of Kitson, the execution creditor, for safe keeping, until he could complete a legal notification of sale under the execution, and immediately gave the required notice; that on the day appointed for sale on the execution, being the 28th of November, 1870, and before any sale, the execution creditor, defendant Kitson, applied to the mortgagee, the plaintiff Cary, and offered to him to pay the whole amount remaining on the mortgage, if he, Cary, would make to him an unqualified assignment of the mort-

gage, and that Cary then consented to take the money and give an assignment "without recourse," but no other, and that Kitson refused to accept an assignment of that kind, and the money was not paid;

That Cary then demanded the goods, which being refused, he at once commenced this suit, before any thing further had been done under the execution, and obtained the goods upon the writ;

That within ten days thereafter, the plaintiff Cary, as mortgagee, sold the goods under the power in the mortgage, at public auction, for one hundred and sixty-one dollars, the defendant Kitson being the real purchaser;

That the actual value of the goods when the suit was commenced, was two hundred dollars, the amount due on the execution, one hundred and thirty dollars and twenty-five cents, and the value of the goods subject to the mortgage, sixty-nine dollars and seventy-five cents;

That the costs and expenses of the mortgage sale were fourteen dollars, and that the surplus arising on that sale, over and above the amount due on the mortgage and for costs and expenses, was offered to the execution creditor, the defendant Kitson, and refused.

The court held that there was no unlawful detention by defendants, when the suit was commenced, and that the difference between the whole value and the mortgagee's interest not exceeding the amount due on the execution, the defendants were entitled to judgment for that sum, being sixty-nine dollars and seventy-five cents, and for their costs, and judgment was so given. The plaintiff complains of this judgment, and contends that the findings do not support it.

In order to have a clear understanding of the case and reach an intelligible result, it seems expedient to bring before us the statute of 1861, and contemplate the respec-

tive rights of the parties, as connected with the goods, when the suit was commenced.

According to the general nature of replevin, the state of things existing when the suit is commenced, will ordinarily control the determination (*Belden v. Laing, 8 Mich., 500; Hickey v. Hinsdale, 12 Mich., 99; Clark v. West, 23 Mich., 242*); and this rule must always prevail, unless very peculiar and unusual reasons exist to prevent it, and it is worthy of especial notice, that the specific statute first cited, regulating the course where there are separate interests in the same goods, makes the determination depend upon the existence of the distinct interests at the commencement of the suit, and not upon the union or division of interests before or after that time. The provision regulating the action on the bond is equally pointed.—*Comp. L.*, § *5045*, as amended in 1865; *Sess. L., 1865, p. 325.* The statute of 1861, referred to, reads as follows:

"When goods or chattels shall be pledged, by way of mortgage or otherwise, for the payment of money, or the performance of any contract or agreement, *such goods* or *chattels* may be levied upon and sold on execution against the person making such pledge, subject to the lien of the mortgage or pledge existing thereon; and the purchaser at such sale shall be entitled to pay to the person holding such mortgage or pledge the *amount actually due* thereon, or otherwise perform the terms and conditions of the pledge, *at any time before the actual foreclosure of such mortgage or pledge, and on such payment* or *performance, or a full tender* thereof, shall *thereupon acquire all the right, interest and property of which the defendant in execution would have had in such goods or chattels,* if such mortgage or pledge had *not been* made."—*Comp. L.*, § *4461*, as amended in 1861; *Sess. L., 1861, p. 451.*

Recurring now to the facts found, it appears that the

plaintiff, being the owner of an unforeclosed mortgage, which was past due, but the amount back upon which was considerably less than the real value of the goods, allowed the property to remain in the hands of the mortgagors, and that the goods so situated were seized on execution against the mortgagors, and held under the levy for the mere purpose of due notice and sale under the execution.

The plaintiff now contends that, as the mortgage was past maturity when the execution was levied, there was no leviable interest remaining in the mortgagors, and that the seizure was consequently a naked trespass, conferring no right and giving rise to no interest under the execution, in favor of any one; and in support of this position, he cites several New York cases, and *Tannahill v. Tuttle, 3 Mich., 104; Eggleston v. Mundy, 4 Mich., 295,* and *Bacon v. Kimmel, 14 Mich., 201.* It is not deemed necessary to examine the New York or early Michigan cases, because the statute of 1861 is believed to have a positive application. So long as the mortgage may be regarded as a mere incumbrance, with a continuing right in the mortgagor, the right to levy, by an execution creditor of the mortgagor, is plainly given, and this court decided, in *Van Brunt v. Wakelee, 11 Mich., 177,* that the mortgagor had a redeemable interest until foreclosure by *reduction of the property into possession,* or by a sale pursuant to the power contained in the instrument, and the statute clearly imports that a leviable interest is not excluded by mere default in payment or performance, because it permits the purchaser on the execution sale, to acquire the right of the mortgagor, by payment or tender at any time before "*actual foreclosure.*"

This provision would be very inappropriate if a mere omission of the *mortgagor to pay or perform* by the day, should be taken as sufficient to bar a levy.

26 MICH.—30.

CARY *v.* HEWITT.

In reference to *Bacon v. Kimmel,* it is only necessary to observe, that the time of payment of the mortgage there in question had not only expired, but the mortgagee had reduced the goods to actual possession, when the attachment was levied. The point now being examined was not presented, and the case has no application. In this case, Cary, the mortgagee and plaintiff, suffered the goods to continue in the actual possession of the mortgagors, the execution debtors, where they were found by the execution, and nothing had been done by Cary to render the mortgage absolute.

There was therefore a subsisting interest in the mortgagors which the law esteems the subject of levy, and this was really subjected to the execution by force of the levy. That a special property was obtained by the levy, will admit of no doubt. A tangible interest was taken, and lawfully taken.

It is not perceived that the events which occurred at the interview concerning the payment to Cary and his assignment of the mortgage to Kitson, were entitled to have any legal influence upon the case in favor of Cary. Certainly, his legal rights were not improved by his refusal to make an unqualified assignment of his incumbrance to the levying creditor, when the latter attempted to redeem.

The next subject of inquiry concerns the right of possession when the suit was instituted. As already stated, Cary, the plaintiff, had, as mortgagee, suffered the property to remain in the hands of the mortgagors, the execution debtors, where it was found by the execution. Hewitt, as constable, had a clear right to levy, and as incident thereto, he was likewise entitled, as against the execution debtors, who were in possession, to remove the property from their custody, and detain it to await a sale upon the process, and I think it must be admitted also, in

view of the right to levy on mortgaged property as given by the statute, and the general powers, duties and liabilities of the officer, in respect to property levied on, that he had, as against the mortgagee, the power to detain the goods in safe and convenient custody for the time prescribed by law for bringing the property covered by the levy to the block. The possession of such authority seems indispensable to a safe and practical enforcement of the right to subject the equity of redemption to execution, and when regularly and fairly exerted, as in this instance, it can only serve to reconcile and protect the different interests.   By the remedies it gives, the law does not intend to allow either the mortgagee or the execution creditor, to overreach or infringe the rights of the other, but aims to secure as far as practicable the application of the debtor's property to both demands, upon principles of justice.

If, when a levy is made, and before it is possible to reach a sale, the mortgagee may intervene under the authority conveyed to him by the debtor through the mortgage, and do as he likes with the goods, the right and benefit intended for the execution creditor, may be always defeated. But if the officer is allowed to detain them in a convenient and safe custody under his levy, for the time requisite to bring the property levied on to sale, the substantial interests of all concerned will be generally promoted, and unseemly scrambles for possession will be averted.

The result reached upon this point is, therefore, that the court properly held that the plaintiff was not entitled to possession as against the execution, when the suit was commenced.

As the goods were seized upon the writ of replevin before a sale upon the execution, the question whether a purchaser on execution could assert a right to the posses-

sion as against the mortgagee, without performing or tendering performance of the condition, is not before us.

The conclusion to which the preceding examination has led, is, that when the suit was commenced the efficient circumstances qualified to direct the determination were, that the plaintiff held an unforeclosed mortgage upon the goods, for less than their real value; that the levy gave a special property, and that the possession under the levy was rightful and valid as against the plaintiff.

The next subject to be considered is, whether the disposition under the power in the mortgage, by the plaintiff, pending the suit, was entitled to influence the result. That act was not one in the cause, but was a proceeding extrinsic, by the plaintiff alone, and which he assumed to initiate and direct upon his own responsibility and for his individual benefit. He had got possession of the goods by his writ, and his bond had become, in a special sense, their substitute. He had power to give them away or destroy them, without violating any legal principle involved in the suit. He had power to sell them, and whether he sold to one or another could not affect the law of the case. Neither could it make any difference whether he got more or less. Whether the goods should be kept to await the decision of the suit, or whether they should be disposed of, and if so, to any particular person or persons, or upon any peculiar terms, or for a greater or less sum, was purely a matter of individual prudence and discretion. It was one with which the defendants had no legal concern. If he chose to get rid of the goods delivered into his hands by the writ, through the form of a public sale under the power in the mortgage, he certainly invited the whole public, including Kitson, to compete at the sale for the interest which existed under the mortgage, and he plainly indicated

that Kitson, or any other person who should bid most,. should have that interest on paying the amount bid for it.    It seems quite inadmissible that a plaintiff in replevin may dispose of the replevied property in this way, and if the defendant happens to be the purchaser at a greater or less price, then turn round, and make the amount so paid a. criterion for the judgment.    A circumstance of that kind is not one making an exception to the rule, that the judgment must turn upon the state of things existing when the suit is instituted.

·But it is contended that this case stands upon a ground making this view inapplicable.    It is true, as was said in *Davidson v. Gunsolly, 1 Mich., 388,* that our statute regulating the judgment in case of separate interests in the goods taken, was intended to introduce in replevin the rule which prevails in trover, whereby the party recovers according to his interest.    But it may be doubted whether this innovation by the legislature, in replevin, where the property is taken on the writ and delivered to the plaintiff, can be made a ground to authorize the court to introduce another quite at variance with the general nature, scope and method of the action, and tending to efface settled distinctions and. make an inlet to confusion.

If, however, the rule in trover and trespass, which allows a return or re-acquirement of the goods to be shown in mitigation of damages, can be made applicable in replevin, when the plaintiff gets the chattels on his writ, I am of opinion that this case, as circumstanced, will not allow it.. A more particular statement may be necessary to explain the position.

The controversy was not between parties respectively claiming an entire ownership of the same chattels, but between parties having separate interests in the same chattels.    The sale to Kitson on the mortgage, did not give him, or re-invest him with, the special property arising from.

the levy, because the mortgage did not embrace that interest. What he obtained was, the separate interest represented by the mortgage, which Cary owned, and which Kitson never owned until he purchased it at the sale. These interests must be distinguished from the goods and from the actual possession. The money paid by Kitson on the sale did not get back the special property, because it had not been parted with. It did not serve to diminish the special property or enlarge the right of Cary. The defendants derived nothing of interest in the goods by the transaction that they or either of them had held before. The rights of the parties were according to their respective interests in the same goods, and not as in cases where the one party or the other has the entire interest.

As the right of the defendants rested on the special interest represented by the levy, and as that interest underwent no change, there would seem to be no room for contending that the judgment ought to have been less favorable to them because Cary voluntarily disposed of his separate interest during the suit, and took his chance. The judgment excluded any right to call upon him to make return or respond for the value, but simply required him to pay so much of the whole value as exceeded his interest when he commenced the suit, together with costs. These costs were occasioned by the suit he instituted for the possession, when he was not entitled to it. They were to be paid by some one, and it is not perceived that the court acted improperly in awarding them against the party who caused them to be incurred under such circumstances.

If the views which have been expressed, are correct, it follows that the judgment of the court below was correctly formed upon such of the facts found as were proper to influence it, and I think it should be affirmed, with costs.

The other Justices concurred.