## *Ex parte* FREDERICK BRIGHT, ON PETITION OF HENRY A. MORROW, FOR WRIT OF *Habeas Corpus*.

MILITARY UNDER CONTROL OF CIVIL GOVERNMENT.—In our country the army derives its existence from, and is under the absolute control of the Civil Government.

MARTIAL AND MILITARY LAW DISTINGUISHED.—Martial and Military Law are not the same. The former depends largely upon the discretion of the chieftain who proclaims it. The latter is as clearly defined as is any system of Statute, Common or Civil Law. The former may apply both to soldiers and citizens; the latter applies only to the army.

MARTIAL AND CIVIL JURISDICTION DISTINCT.—The judgments of courts martial, when acting within their jurisdiction, are as valid as are those of the civil courts. Neither can overrule nor assume the Jurisdiction of the other.

IN TIME OF WAR, OFFENCES OF SOLDIERS TRIED BY MILITARY AUTHORITY.—In time of war, all offences committed by soldiers, are cognizable by courts martial or military commissions. If the civil courts, in time of war, try and punish such offenders, it is because they are permitted to do so as a matter of comity or expediency.

WHEN SOLDIERS, TO BE TRIED BY CIVIL AUTHORITIES IN TIME OF PEACE.—In time of peace, a soldier of the National army can be demanded by and surrendered to the civil authorities, to be tried and punished by them, only when he is charged with an offence "such as is punishable by the known laws of the land;" that is, by the laws of the United States, or of a State or Territory.

SOLDIER TO BE DELIVERED TO THE MILITARY AUTHORITIES, WHEN.—A city By-Law or Ordinance is not in this sense a "known law of the land." but a soldier who, when off duty, violates it, may be arrested in the act and restrained by the civil authorities, but may not be tried and punished by them. It would be their duty to deliver him, on demand, to the military authorities, and the duty of the latter to enforce the law military against him.

SOLDIER, HOW TAKEN FROM THE CIVIL AUTHORITIES.—If the civil authorities refuse so to deliver up the soldier, the military authorities may take him by force; but if, instead of resorting to force, the military authorities apply to a Federal Court or Judge, the prisoner must be discharged from the custody of the city authorities by the writ of *habeas corpus*.

PROVOST GUARD IN A CITY.—It is the right of the military authorities to station a Provost guard in a city, to arrest any soldier who shall violate any City Ordinance.

APPEAL from the Third District Court.

On the 14th day of February, 1874, a verified petition, of which the following is a copy, was presented to the Chief Justice, to-wit:

"To the Honorable James B. McKean, Chief Justice of the Territory of Utah:

Your petitioner, Henry A. Morrow, for cause of complaint to your honor, states:  That Frederick Bright is an enlisted private soldier in the Thirteenth Regiment (Company C), in the army of the United States, and belongs to the command of your petitioner, who is the officer in command of the forces of the United States stationed at Camp Douglas, in the Territory of Utah; that on the 12th day of February, 1874, said Bright was arrested by the police authorities of the corporation of Salt Lake City, and is now confined under a warrant of commitment, (a copy of which is hereto attached,) by one John D. T. McAllister, City Marshal; and that the alleged cause of his confinement is, that said Bright was guilty of violating an ordinance of said corporation forbidding drunkenness and disorderly conduct; that the sentence under which he is confined, as appears from said warrant, is that he pay a fine of five dollars, and, in default of payment that he be imprisoned at labor on the public works of said city, at one dollar per day and board, until said fine is paid.  All of which is illegal, as your petitioner is informed and believes, in this:—

That said Bright is not subject to the jurisdiction of said corporate authority for the offense charged.

That said sentence and judgment, having been rendered by one Jeter Clinton, a Justice of the Peace, for a violation of the said ordinance, is void for want of jurisdiction.

Subscribed and }          HENRY A. MORROW,
                 } Lt. Col. U. S. Army, Com'd'g Camp
sworn to, &c.   }     Douglas, U. T."

Upon this petition a writ of *habeas corpus* was issued, and Bright was brought before the Chief Justice.  The return to the writ corroborated the facts alleged in the petition, and, after argument of counsel, the soldier was discharged from custody.  The city brought an appeal to this court.

*Tilford & Hagan*, and *Z. Snow*, for the Appellant, cited Bishop's Cr. Law, vol. 1., ch. 4, secs. 44 and 46; Greenleaf's Ev., vol. 3, secs. 468-9; Kent's Com., vol. 1, p. 341, note A; Benet's Military Law, pp. 8 and 14; Articles of War; U. S. Constitution; Fox *v.* State of Ohio, 5 How. 511; Moore *v.* State of Illinois, 14 How. 13; United States *v.* Marigold, 9 How., 560.

*John R. McBride*, for the Respondent, cited U. S. Constitution, art. 1., sec. 8; 12 Wheaton, 419; 3 Wall. 407 and 713; 4 Id., 123; 6 Id., 35; 32d, 33d and 99th Articles of War; Scott's Military Law, secs. 625, 631, 913, 1024; (and notes and cases there cited); Holt's Opinions, Dig. 10, 11; the Matter of Wm. H. Bird, Scott's Mil. Law, p. 421; Opinions Att'ys General, vol. 2, p. 10, and vol. 6, pp. 10 and 413; Matter of Farrand, 1 Abb. U. S. Reps., 140; Horn *v.* The People, 26 Mich., 221; Mixer *v.* Supervisors, Id. 442; Vanzant *v.* Waddell, 2 Yerger, 260; State Bank *v.* Cooper, Id. 599.

McKEAN, C. J., delivered the Opinion of the Court.

In our country the army derives its existence from the civil government; and it can be controlled, increased, diminished, or abolished by that government, either in time of war or of peace. While it exists it is as amenable to the government as is any other creature or authority emanating therefrom. " The Congress shall have power,   *   *   to constitute tribunals inferior to the Supreme Court,   *   *   to raise and support armies,   *   *   to provide and maintain a navy,   *   *   to make rules for the government and regulation of the land and naval forces." (Constitution, Art. 1, sec. 8.) Martial law and military law are by no means the same thing. When a military chieftain, in time of war, or in some great emergency, proclaims martial law, he may limit its operation to a very narrow range, or he may make himself a dictator whose word is law, save in so far as international law and civilization require him to respect and enforce other laws. What martial law is or may be depends so much upon the discretion of the commander

who proclaims it, that a description of its exercise in one instance, would rarely describe it in any other.

Military law, however, is as clearly defined a system of laws as are the statute and common laws, or the statute and civil laws, prevailing in any State of the Union. Military law consists of the Articles of War enacted by Congress; the Regulations and Instructions sanctioned by the President; the orders of commanding officers; and certain usages or customs constituting the unwritten or common law of the army. These, taken together, are the law military of the land. This law applies only to the army. Martial law has a wider scope, and applies as well to the inhabitants of the country or district over which it is proclaimed. Martial law has a wider scope, and applies as well to the inhabitants of the country or district over which it is proclaimed. Martial law now exists nowhere in the United States, while military law must exist so long as we have an army.

Congress has not only exercised its power "to raise and support armies," but also "to constitue tribunals inferior to the Supreme Court,"—among which are courts martial. And the judgment of courts martial, when acting within their jurisdiction, are as valid as are those of the civil courts. Neither can overrule nor assume the jurisdiction of the other. In time of war all offences committed by soldiers, are cognizable by courts martial or military commissions. If the civil courts, in time of war, try and punish such offenders, it is because they are permitted to do so as a matter of comity or expediency. The civil authorities have no right, in time of war, to demand the surrender to them, for punishment, of a soldier who has committed an offence. Not so, however, in time of peace. The Thirty-third Article of War provides as follows:

"When any commissioned officer or soldier shall be accused of a capital crime, or of having used violence or committed an offence against the person or property of any citizen of any of the United States, such as is punishable by the known laws of the land, the commanding

officer and officers of every regiment, troop, or company to which the person or persons so accused shall belong, are hereby required, upon application duly made by or in behalf of the party or parties injured, to use their utmost endeavors to deliver over such accused person or persons to the civil magistrate, and likewise to be aiding and assisting to the officers of justice in apprehending and securing the person or persons so accused, in order to bring him or them to trial. If any commanding officer or officers shall wilfully neglect or shall refuse, upon the application aforesaid, to deliver over such accused person or persons to the civil magistrate, or to be aiding and assisting to the officers of justice in apprehending such person or persons, the officer or officers so offending shall be cashiered."

This is the only provision of law requiring a military commander to deliver over to the civil authorities, for trial and punishment, an officer or soldier who is charged with crime. And it will be observed that this requires such surrender only when the person demanded is charged with an offence " such as is punishable by the known laws of the land." If a soldier were to rob a mail bag in the postoffice here, then the word " land," in this statute, would mean the United States; if he were to commit highway robbery here, then it would mean the Territory of Utah—the former being an offence against the Federal, the latter an offence against a Territorial law. " Known laws of the land," are not the by-laws or ordinances of a city. But they are, when Federal laws, those laws of which the Federal courts, in all parts of the Republic, are bound to take judicial notice. They are, when State or Territorial laws, those laws, whether written or unwritten, of which the courts of the State or Territory are bound to take judicial notice. They are the statutes enacted by the law-making power, and the unwritten laws of the land. The ordinance of Salt Lake City forbidding drunkenness and disorderly conduct is not such a law. It was not enacted by the law-

making power of the land. It is neither a Federal nor a Territorial law. Courts cannot take judicial notice of its existence. It must be proved like any matter of fact.

It is clear, therefore, that the civil authorities of Salt Lake city would have had no right to demand the surrender to them of the soldier Bright, to be tried for the offence charged, and it is equally clear that had they made such demand, the Commandant of Camp Douglas would have had no right to deliver him over to them. It follows, of course, that the trial and sentence of Bright, by the Justice of the Peace, were illegal, null and void. He was, therefore, rightfully discharged by *habeas corpus.*

But we assume, from the Record, that Bright, when off duty, and in the city, was guilty of violating the ordinance forbidding drunkenness and disorderly conduct. Was this wrong remediless? Was this soldier, on leaving the camp and entering the city, at once superior to all control, save his perhaps uncontrollable appetite? By no means. It was the right, and it may be found to be the duty, of the Commandant of Camp Douglas, to station a Provost guard in the city, to arrest any soldier who shall violate any city ordinance. It cannot be permitted that a soldier, because he cannot be tried by a city court for violating a city ordinance; a soldier who may have little if any self control, shall be, while in the city, above control.

If there was no Provost guard in the city, as the Court presumes there was not, and if Bright was guilty of drunkenness and disorderly conduct, as the Court presumes he was, then it was right and lawful for the police authorities to take him into custody and restrain him. Further than that, however, they had no right to go. To try him and enter judgment of fine or imprisonment against him, was not lawful. Instead of doing this, instead of waiting for the prisoner to be discharged from his illegal sentence by the writ of *habeas corpus*, the police authorities ought to have surrendered him to the military authorities without controversy or resistance.

Instead of doing so, however, they not only opposed his discharge by *habeas corpus,* but have appealed from the judgment discharging him. If, instead of seeking a civil remedy, Col. Morrow had released the soldier by force, military law, which is as valid as any other human law, and more summary than most remedies, would have fully justified him.

But is a soldier to escape trial and punishment for violating the ordinance of Salt Lake City, forbidding drunkenness and disorderly conduct? By no means. It is the duty of the Commandant of Camp Douglas, whenever such offence is brought to his notice, to see that the law military is enforced against him. The offence is only cognizable by a court martial, and the civil courts can no more assume the jurisdiction of that court, than it can assume the jurisdiction of the civil courts.

We have therefore reached the following conclusions:

1st. That a soldier of the National army can be demanded by and surrendered to the civil authorities, to be tried and punished by them, only when he is charged with an offence, in time of peace, " such as is punishable by the known laws of the land," that is, by the laws of the United States, or of a State or Territory.

2d. That a city by-law or ordinance is not in this sense a law of the land; but that a soldier who, when off duty, violates the ordinance of Salt Lake City forbidding drunkenness and disorderly conduct, may, in the absence of a Provost guard, be arrested in the act and restrained by the civil authorities, but may not be tried and punished by them.

3d. That in case of such arrest and restraint, it is the duty of the civil authorities to deliver over such soldier to the military authorities, on the demand of the latter; and the duty of the military authorities to enforce against him the law military forbidding such offence.

4th. That if the civil authorities, after arresting such offender, refuse to deliver him over on such demand, or proceed to try and punish him, the military authorities may take him by force.

5th.  That if, instead of resorting to force, the military authorities present a petition to a Federal Court or Judge of the Territory, the prisoner must be discharged from the custody of the civil authorities by the writ of *habeas corpus*.

The judgment appealed from must be affirmed.

EMERSON, J., concurred.

BOREMAN, J , filed the following concurring opinion :

Frederick Bright, a private soldier of the United States army, and stationed at Camp Douglas, came into Salt Lake City.  He was arrested by the police whilst he was in the city, taken to the Police Court, tried upon a charge of violating a city ordinance against drunkenness, found guilty and sentenced to pay a fine of five dollars.  In default of payment thereof, he was committed to prison until said fine should be paid, time of imprisonment, however, not to exceed five days.  Whilst so confined, a writ of *habeas corpus* was sued out by Colonel H. A. Morrow, commander of Camp Douglas, for his release.  The case was heard by Chief Justice McKean at Chambers, and a judgment rendered discharging him from the custody of the city authorities.  To reverse this judgment the case is brought to this court.

The Constitution of the United States and the laws of Congress made in pursuance thereof, are the supreme law of the land, and the Constitution provides, in Sec. 8th, of Art. I., that Congress shall have power to "declare war," to "raise and support armies," and " to make rules for the government and regulation of the land and naval forces."  When Congress makes such rules, therefore, they are the supreme law of the land upon that subject. And Congress has done so, and in pursuance of said authority in the Constitution, has, by the act of April 10th, 1806, established rules and articles of war " by which the armies of the United States shall be governed" —to u e the language of the statute itself.  (2 Stats. at Large, 359, *et seq*).

Thus Congress has not failed to carry out the power given in the Constitution; but has carried it out fully, and in ample manner, making a complete system of rules and regulations, with appropriate tribunals to enforce them, for the government of the army. Thus there is a complete military government formed, totally distinct from the civil government; and we are told by Chief Justice Chase, in *ex parte* Milligan (14 Wallace, 237), that the Constitution itself provides for a military government as distinct from the civil government, and the Court say in that case that every soldier is amenable to that jurisdiction which Congress has created for their government, and whilst serving as such, he surrendered his right to be tried by the civil tribunals. (4 Wall., 123). When a person enters the army, he passes from one jurisdiction to another, as much so as if passing from one State to another. He cuts loose from the control of the civil authorities, and passes under the control of that equally constitutional authority, the military. He takes an oath that he will obey those appointed over him in the service "according to the rules and articles for the government of the army." (Art. 10). In the language of Chief Justice Chase again, in *ex parte* Milligan, in entering the army, a person yields up "the civil safeguards of the Constitution." He even gives up his right to "trial by jury." And this has been so understood, and acted upon, as Chief Justice Chase says, from the very adoption of the Constitution to the present time. There is no doubt about the general rule that the military are subject to the civil power, but in this nation, under our Constitution, the civil power referred to is that of the nation, and not that of the States, Territories or cities. The army is a part of the executive power of the nation, and in its sphere totally independent of the co-ordinate branches of government, except where otherwise, under the Constitution, it is by Congress provided. The civil courts can hear no appeals from the military courts, and can in no case interfere with military law. The courts of the United States, but not local nor State courts, can

examine to see that the military courts keep within the boundaries of their jurisdiction, but can go no further. The action of a court martial, properly constituted, and proceeding according to the rules and articles of war, cannot be reviewed in any civil court. The jurisdiction of courts martial has no connection with what is under our government termed the "judicial power." Nor do such courts get their power from those parts of the Constitution which speak of "judicial power." Such parts of the Constitution refer wholly to the civil courts. The courts martial get their jurisdiction entirely from the war powers of the Constitution. (Dynes *v.* Hoover, 20 How., 1 Kent's Com. 341 n. [a] ).

And this jurisdiction of the military tribunals over all belonging to the army, is exclusive. If it were concurrent with the civil courts, the efficacy of the army would be greatly impaired, and in case of unfriendly local or State courts, especially in the incipient stages of insurrection or rebellion, the action of the military could be very greatly obstructed, if not thwarted entirely. But this question is left to no "doubting disputation," it is settled; and the jurisdiction of courts martial, in all cases arising under the rules and articles for the government of the army, is as absolute and independent as if the army were a separate community. And the counsel for the city say as much themselves, when they declare that "military law is a body of laws and regulations made by competent authority to govern the military State as a *distinct community*." Congress is unquestionably, under the Constitution, "competent authority," and the only competent authority, to make such rules and regulations.

In "Story on the Constitution," it is laid down that Congress alone can raise armies (sec. 1188); that the power to declare war is exclusive in Congress (sec. 1177); and that the power to make rules for the government and regulation of the army is *incident* to the powers to raise armies and make war (sec. 1197). The "incident" cannot occupy a broader field than the power to which

it is attached; and there can be nothing unreasonable in concluding that this incidental power is exclusively in the hands of Congress, just as the power to declare war and raise armies, is exclusive. We are told by the Supreme Court of the United States, and by text writers, that the militia, when in actual service, are exclusively under the control of the general Government, and no State or Territorial authority ever had or could have jurisdiction over such militia. After the power is once given to the general Government, it cannot exist elsewhere, unless expressly authorized in the Constitution, and the Constitution makes no such provision. It therefore does not exist. (Houston *v.* Moore, 5 Wheaton, 17 and 53; 2 Story on Const., sec. 1213). But the militia, in actual service, are only subject to the same rules that the regular United States troops are. (5 Wheaton, 19).

Hence the jurisdiction of the general Government over the regular troops is alike exclusive. And neither the militia in actual service, nor the regular United States troops, are subject to the jurisdiction of any tribunal such as Congress shall prescribe. Congress has prescribed that all the military shall be subject to the jurisdiction of courts martial or other military authority, and has not granted nor consented that such jurisdiction shall exist elsewhere, except in certain specified cases, which will be referred to hereinafter. But the Supreme Court of the United States uses even more positive language, and in Tarbell's case, (13 Wallace, 397), fully recognizes the exclusive doctrine referred to when it says, that "among the powers assigned to the national Government, is the power to raise and support armies; and the power to provide for the government and regulation of the land and naval forces;" that "the execution of these powers falls within the line of its duties; and its control over the subject is plenary and exclusive." The Court further say that Congress "can provide the rules for the government and regulation of the forces after they are raised, define what shall consti-

tute military offences and prescribe their punishment. No interference with the execution of this power of the national Government in the formation, organization, and government of its armies by any State officials could be permitted without greatly impairing the efficiency, if it did not utterly destroy this branch of the public service."

Congress has so provided for the government of its armies, and therefore such government so provided by Congress is exclusive, and not subject to interference by any tribunal or official outside of, and not under, such exclusive government. Hence, no State, Territorial or City authority, can interfere with such military rule over all who are in the military service. Congress thus being exclusive in its control over this subject, had, under the Constitution and the decisions referred to, full power to create these military tribunals and thus withdraw all persons in the military service away from the control of civil courts. But a soldier is no less a citizen of the United States because he is a soldier; yet as a citizen he has, whilst in the service, given up his "civil safeguards," and passed from the control of one branch of the Government to that of another.

Drunkenness is cognizable by courts martial. This is admitted, or, at least, not contradicted. Yet it is in effect asserted that, although this may be true, still that drunkenness of a soldier when "off duty," and away from post or camp is not a military offence. In other words, that a soldier whilst absent from camp, and "off duty," is subject to the civil authorities of the city. The 97th Article of War says: "The officers and soldiers of any troop, whether militia or others, being mustered and in pay of the United States, shall at all times and in all places, when joined or acting in conjunction with the regular forces of the United States, be governed by these rules and articles of war, and shall be subject to be tried by courts martial, in like manner with the officers and soldiers in the regular forces, save only that said courts martial shall be composed entirely of militia

officers." This article pre-supposes that the regular troops shall at "all times and in all places" be subject to these rules and regulations.

Article 32 declares that "every officer commanding in quarters, garrison, or on the march, shall keep good order, and to the utmost of his power, redress all abuses or disorders which may be committed by any officer or soldier under his command; if, upon complaint to him of officers or soldiers beating or otherwise ill-treating any person, of disturbing fairs and markets, or of committing any kinds of riots, to the disquieting of the citizens of the United States, he, the said commander, who shall refuse to omit to see justice done to the offender or offenders, and reparation made to the party or parties injured, as far as part of the offender's pay shall enable him or them, shall, upon proof thereof, be cashiered or otherwise punished as a general court-martial shall direct." Under this article all "abuses" and "disorders" by soldiers "under his command" are to be redressed by military authority. Had it been intended to refer to only such abuses as took place in camp, or in the ranks or whilst on duty, it would have so said. But no exceptions are made, and the other parts of the article plainly show that abuses anywhere committed by any one under the command, were embraced, for it speaks "of disturbing fairs or markets" and of "committing any kinds of riot to the disquieting of the citizens of the United States." Such fairs are not in garrisons, nor are such markets, nor could such fairs or markets be disturbed by soldiers on the march, if such soldiers were "on duty."

The 99th Article of War provides that "all crimes not capital, and all disorders and neglects which officers and soldiers may be guilty of to the prejudice of good order and military discipline, though not mentioned in the foregoing Articles of War, are to be taken cognizance of by a general or regimental court martial, according to the nature and degree of the offence, and be punished at their discretion." Here is a general author-

ity to the court martial to take cognizance of all disorders committed by officers or soldiers to the prejudice of good order and military discipline, whether committed when " off duty" or "on duty," it would be difficult to find any such disorder. If "on duty," the party is unfit to discharge the duties devolving upon him, and if " off duty," he is wholly unfit to obey a summons to return to duty. His drunkenness is then damaging to the service, and prejudicial to military discipline. And that offences committed both "off duty" and "on duty," are comprehended. has been the view taken of the subject by the military authorities themselves. (Benet's Military Law, pp. 266 and 577. See also "Digest of Opinions of Judge Advocates," title "Jurisdiction," Sec. 4 and 5).

But it is further claimed that, under the 33d Article of War, the military are expressly commanded to deliver over offenders to the civil authorities. And this is true, and if drunkenness were one of the offences embraced in this Article, then it would be the duty of the military commander to deliver over the offender to the civil courts. But even then, under the section, no authority could be claimed by the civil authority to try, convict and punish such offenders without notice to the commanding officer, and without his consent. But this 33d Article does not refer to such offences as drunkenness. It refers wholly to the higher grades of offences. And then in regard to these higher offences, the civil courts have no authority to call for the delivery of the offenders, except the authority given in that Article. They cannot demand such delivery because any local authority is recognized as supreme over the military. They must look alone to the Article itself, referred to, for their right to try, convict and sentence the offender. This 33d Article requires that the party must be charged with some offence "punishable by the known laws of the land." And we think it beyond cavil that the " known laws of the land" are only such as courts will take judicial notice of. City ordinances are not such laws. (Horn *v.*

People, 26 Mich., 228). The petitioner here, then, was not guilty of a violation of the "known laws of the land," and could not rightfully be tried in a civil court for the offence charged. He could not even be tried by a military court. He waived his right to be tried by a civil court when he entered the service, and he cannot at pleasure withdraw that waiver, which the Constitution and National law said he had the right to make. He is bound by his first waiver, and the military authority is authorized to enforce it, and civil courts are excluded from any control over him.

The rules for the government and regulation of the armies, no where show that they are to be enforced only in time of war. And as this no where appears, we have no right to infer it. And to conclude that they were only applicable in time of war, would lead to the absurd conclusion that the regular armies of the United States in time of peace are not subject to any rules and regulations, specially applicable to them, but that the civil courts have exclusive and absolute control over the same.

We see then, that the soldier owes obedience to his superior officers, and whoever prevents this obedience, deranges military law, and deprives the officer of the service of his command, and that completely destroys the efficiency and discipline of the army. The Constitution and laws expressly except persons in the land and naval forces, from the ordinary operations of civil tribunals. And this is a necessity; for otherwise the army could not be maintained. The idea of exclusiveness, in the general government, is not alone applicable to the clauses of the 8th section of Article I, of the Constitution, which apply to the army, but it applies with more or less strictness to all of the clauses of that section. Several of the powers granted to the general government, under that section, are declared to be exclusively in the general government, whether Congress sees fit to make the appropriate legislation or not. In the others it is declared exclusive, to the extent that

when Congress has acted and made the appropriate legislation, no local or State law repugnant thereto is valid, and all State or other local laws which, in their execution conflict or interfere with the National law, are to that extent null and void.

In coming to the conclusion we have, that the discharge of the prisoner was proper, we desire to say, that civil authorities could arrest soldiers in the actual commission of offences, and in some instances, in attempting to commit an offence. But they cannot be retained. They must be set at liberty or delivered to the military immediately when the danger is passed. They cannot arraign soldiers in the Police Court; and such can be arrested only to prevent damage or further injury being done by them.

In the case before us, the Police Court had no jurisdiction to try the prisoner nor to punish him.

The judgment, therefore, of the Court below is affirmed.