ISAAC HAYNES AND GEORGE JUDGE v. WILLIAM LEPPIG.

*Levy on mortgaged chattels—Fraudulent possession.*

A mortgagee of chattels must prove the amount and condition of his claim if a controversy as to his rights under the mortgage arises with any one interested in questioning it.

A mortgage is not actually foreclosed until the right of redemption is lost, and that can only be when there has been a sale of the property so that some one sets up a title no longer conditional.

A chattel mortgage in Michigan is not a sale but only a security; but the statutes favor possession by the mortgagee and under some circumstances require it.

Execution levy can be made on mortgaged chattels while in the mortgagee's hands before foreclosure. Comp. L., § 6097.

Concurrent possession of mortgaged chattels before foreclosure can be held by the mortgagee and by an officer levying execution; but the mortgagee holds only as the mortgager's bailee, with a special interest, and for the sole purpose of storing them apart from property in daily use; and the officer cannot sell in parcels so long as the mortgage is in force, and must not interfere with the mortgagee's right of sale, but can retain the chattels in his custody until sale is made, and has a right to know the amount and conditions of it. And when the mortgagee proceeds to sell he can protect the rights of the officer as well as his own.

If a mortgagee of chattels takes possession in the mortgager's behalf before foreclosure to screen the property from execution, it is fraud; and if having a mortgage claim he sets up some other against creditors levying on a mortgaged interest, or if not in possession in good faith under his mortgage claim, fraud may be inferred. If the change of possession from the owner is not actual, his security would be absolutely void as against an execution levy, and if he is a purchaser, the purchase would be presumptively fraudulent.

Any creditor has a right to know whether a person in possession of property has any claim hostile to his right to levy on it, and the declarations of employees in charge in their employer's absence, made in reply to inquiries by his creditors, are admissible as in the nature of *res gestæ*, to explain a possession of chattels claimed to be held under an unrecorded bill of sale to one whose rights are kept secret.

Creditors seeking to levy on property cannot be required to call hostile witnesses to show the nature of a possession under which it is held, when the case *prima facie* requires explanation from the other party.

It is doubtful whether a levy on chattels can be contested on the inconsistent grounds that the one in possession holds as mortgagee and under a bill of sale.

Error to Kent. Submitted April 10. Decided April 22.

REPLEVIN. Defendants bring error.

*Oscar T. Tuthill* and *Dennis L. Rogers* for plaintiffs in error. Declarations of one in possession of property explanatory of his possession or title are admissible as *res gestæ* (*Fontaine v. Beers*, 19 Ala., 722; *Hair v. Little*, 28 Ala., 236; *Taylor v. Lusk*, 9 Iowa, 444; *Blake v. Graves*, 18 Iowa, 211; *Holt v. Walker*, 26 Me., 107; *Mobley v. Bilberry*, 17 Ala., 428; *Clealand v. Huey*, 18 Ala., 343; *Upson v. Raiford*, 29 Ala., 188; *Carnahan v. Wood*, 2 Swan [Tenn.], 500) especially if made to one who has a claim upon the property and has a right to know who claims it, *Sullivan v. Park*, 33 Me., 438; *Garrison v. Garrison*, 29 N. J. Law, 153; *Bowen v. Buck*, 28 Vt., 308. Property held under a chattel mortgage before foreclosure is subject to levy and sale on execution, if the mortgagee's claim is discharged, Herman on Chattel Mortgages, p. 441; *Van Brunt v. Wakelee*, 11 Mich., 177; *Bacon v. Kimmel*, 14 Mich., 201; *Worthington v. Hanna*, 23 Mich., 530; *Flanders v. Chamberlain*, 24 Mich., 305; *Lucking v. Wesson*, 25 Mich., 443: *Sheldon v. Warner*, 26 Mich., 403; *Cary v. Hewitt*, id., 228; *Macomber v. Saxton*, 28 Mich., 516; *Jewell v. Lamoreaux*, 30 Mich., 155; *Nelson v. Ferris*, id., 497; *Kohl v. Lynn*, 34 Mich., 360; *People v. Bristol*, 35 Mich., 28.

*E. S. Eggleston* for defendant in error.

CAMPBELL, C. J. This is an action of replevin brought by Leppig, who recovered judgment below against plaintiffs in error. They were in possession of the property in dispute, under a levy made on attachment against one Gustave Christ, December 29, 1875.

Leppig claimed to have been in possession in his own

right. On the trial his interest in this personal property was set up as originating in a chattel mortgage made in February, 1875, and also under a bill of sale made November 29, 1875. If he was in possession it was taken under this last instrument, immediately after its date. The controversy below turned on two main points, viz.: whether he was in possession at all, and what rights, if any, he held under the bill of sale. A third not less important question, in one view of the case, was whether, assuming his possession to be that of a mortgagee, a levy could be made upon it while so held.

Among other questions which were discussed on the trial was the validity of this bill of sale if meant as a mortgage, the same not having been recorded, and also its validity as an absolute conveyance under the circumstances as to possession. Both questions are affected by an inquiry into its consideration and conditions, and the quality of what is claimed to have been the possession. Some points of evidence also arise. If the record contains all of the testimony there are some very significant difficulties with any of the theories of Leppig. But we are only concerned with the law questions. And the first matter demanding attention is the nature of the mortgage interest, if it was such.

The mortgage of February 1875, is a mere mortgage of indemnity against liabilities assumed by Leppig for Christ. It requires Christ to pay certain obligations for which Leppig was bound as surety, but it does not require Christ, as between him and Leppig, to respond until February 18, 1876, or nearly two months after the levy. Any possession held in December was not a possession on default, but if valid was only the possession of a mortgagee, to preserve the property, and might never amount to any more.

If the bill of sale can be treated as a mortgage upon this record, it involves several inquiries. An important one is whether it superseded the former mortgage. Beyond this comes the inquiry what it was meant to

secure. The nominal consideration was $2,000, and it could not very well be extended as a mortgage beyond that without some clear explanation. No one gave any full testimony upon its character and consideration as a mortgage but Leppig himself. If it was a mortgage at all, it was an indemnity mortgage, and there is no evidence in the cause what particular debts then existed which were meant to be covered by it. It seems entirely clear from Leppig's testimony and garnishee disclosure taken together that nothing was actually due him at the date of the levy.

We think when a controversy arises concerning a mortgagee's rights under a mortgage with any one interested in questioning it, that he is bound to prove the amount and conditions of his claim. Without this no one else can tell what his own rights are in the property or against it, and a mortgagee has no right to withhold such information. If he has rights he has the means possessed by no other person of explaining them, and he is bound to explain them. Nothing proper to be called an explanation is given here.

Assuming that he had mortgage rights and was in possession under them—upon which we shall have more to say hereafter,—the question arises, what rights an execution creditor possesses under such circumstances.

There is no testimony which in any degree tends legally to show either that there had been any default, or that if there had been, Leppig had possession with any purpose of enforcing the mortgage for that default.

The statute of 1861, whereby for the first time the interest of a mortgagor of chattels was made subject to levy, allows such levy and a redemption by the execution purchaser, "at any time before the actual foreclosure of such mortgage." Comp. L., § 6097. A mortgage is not actually foreclosed until the right of redemption is lost, and that can only be when there has been a sale of the property so that some one sets up a title no longer conditional.

Under our statutes, while the chattel mortgage is not a sale and is only a security, the policy of the law favors, and in some cases requires, the assumption of possession by the mortgagee, on peril of avoidance as against creditors. Comp. L., § 4706.

If then the statute allowing levies cannot be made to cover property in the hands of the mortgagee before foreclosure, it may be defeated altogether. The statutes all go upon the presumption that all property mortgaged will be held by the mortgagee. His possession until foreclosure is merely as bailee of the mortgagor with a special interest. We think an officer may under the statute make such a levy, and that every mortgage is subject to that statutory condition. The officer cannot sell in parcels while the mortgage is in force. *Worthington v. Hanna*, 23 Mich., 530. But while he is bound to hold his possession in such a way as not to interfere with the mortgagee's right of sale, he has a right to retain it in custody until a sale is made, and he has a right to know the amount and conditions.

The case of *Cary v. Hewitt*, 26 Mich., 228, contains some views which are substantially applicable here, (although in that case there had been no assumptions of possession by the mortgagee before the levy), and refers to the entire practicability of sustaining mutual rights.

If a mortgagee for any honest purpose undertakes to take possession of property before default, it can only be for the purpose of safely storing it apart from other property which is in daily use. He cannot use it as his own or for ordinary uses, and cannot possibly be put to any inconvenience by a concurrent occupation of any one else. The officer cannot make a sale of the mortgagor's interest to any advantage unless the property can be shown to bidders. And when the mortgagee proceeds to sell, there is no reason why he cannot so far act in concert with the officer as to protect both rights. Unless he has actually advertised before the

levy, the sale by the officer will usually take place before the mortgagee can have any occasion to act at all. It is easy to imagine possible conflicts, but sensible and honest men can as easily avoid them. Concurrent possessions are not rare, and if the right exists it must be respected or the parties must take the consequences.

We have deemed it necessary to consider this point in deference to the assumption of the court below that it was a turning point in the cause. For reasons to be presently mentioned, we do not see much ground for it.

The statute in regard to recording chattel mortgages goes further than the previous section concerning transfers of an absolute character, and makes unrecorded securities on personal property not only presumably, but absolutely void against creditors, unless "accompanied by an immediate delivery, and followed by an actual and continued change of possession." § 4706. We have found nothing in the case tending to show that Leppig set up any claim to possession as mortgagee at all.

We gather from the testimony of Leppig's witnesses and his own that Christ was the proprietor of an establishment for selling beer and also for its manufacture, and had a general salesman named Keppler and various subordinates. A short time before this levy Christ was charged with a felony for which he was in the succeeding January sent to State prison. Up to the time of his imprisonment in the local jail, which was some time in December, he remained in the house and premises on the same apparent terms of residence as before. After his sentence was ended he returned and took charge as before. There was no change made public at any time so far as any evidence goes. The only evidence of possession was that of Leppig after the bill of sale was made, who states in his testimony: "I went and notified Hugo Keppler that it was all mine, and hired him to peddle out this beer and do the business generally." Keppler paid all the moneys collected, as Leppig states, to Miss Christ, with whom Leppig settled every week.

The bill of sale was made simultaneously with a conveyance of the realty, and as was distinctly sworn to by Mr. Blair, who did the business, and is uncontradicted by Leppig, there was but one consideration for the whole transaction, which superseded the old chattel mortgage, and Leppig gave his own notes for about $8,000 to pay for the property. When Leppig swore to this assuming of possession he had given no hint of continuing to hold any claim as mortgagee, and was swearing to possession as owner. There is nothing to show that Keppler had any right to attorn or did attorn to Leppig on any claim either as owner or mortgagee, and no evidence of any delivery by Christ. The possession, if it was a possession, was taken distinctly as owner. No mortgagee had as such any right to assume and continue the business of selling beer, and no possession was taken in any other way than by the continued employment of the salesman. A large part of the property was not intended for sale in the business, but was apparatus auxiliary to it.

We think that when Leppig by his cross-examination admitted that he held the property only by way of security, he admitted in view of his other testimony that he was not in possession as a mortgagee in default or for any direct purpose in aid of it, and that if he was in possession at all it was really for some other purpose. It is certainly a somewhat serious question how far he could rely on the trial on two inconsistent positions, and how far he could turn a possession which if obtained at all was obtained under pretense of ownership, into one of a different kind. As this question was not passed on by the court below, we shall not discuss it. But the charges based on a supposed claim of possession as mortgagee after default are objected to, and not, we think, sustained by the proof. The same objection lies to the charges based on possession as owner upon purchase made in payment of past debts. If there was a purchase at all, it was on credit for about $8,000, all

payable in the future, so far as the testimony shows on the record, and if this should turn out to be the case it would have a bearing on the question of whether there was any good faith in the purchase. The charge is not supported by the evidence.

The question of possession becomes important in any point of view. If Leppig took possession to save the property for Christ, it was of course a fraud. If he had a mortgage claim, then setting up any other as against creditors levying on a mortgaged interest would be at least a badge of fraud. If he was not in possession in good faith under his mortgage claim, and was no more than a mortgagee, it is difficult to see how the inference of fraud can be avoided. If there was no real and actual change of possession, his security would be absolutely void as against the levy. If a purchaser, it would be presumptively fraudulent. Whether such a change existed was therefore a prominent point.

The court below refused to allow the character of the possession to be proved by the declarations of Keppler and other persons employed, made in reply to inquiries addressed to them by those who had a right to make them. Any creditor has a right to know whether a person in possession of property has any claim hostile to his right to levy. The bill of sale being unrecorded, and the rights of Leppig under that being secret, and Christ being under arrest, the persons in charge are those of whom inquiry would most naturally be made, and we think their answers would be evidence in the nature of *res gestæ* to explain the possession. If not, we do not see how a sheriff or creditor could be protected.

In the present case all the testimony shows there was no apparent change in the business. No one but Leppig and Keppler, who was either Leppig's or Christ's agent, knew the facts, if there were any, which made the possession different. These were all hostile to the creditors, or presumably so, and they cannot be required to make them their own witnesses, when the case is

40 MICH.—77.

*prima facie* such as to require explanation from the other side. If a levy made under such circumstances, with every assurance of its legality, can be invalidated by a private arrangement denied practically by the only person of whom inquiry could be made, it certainly should be very clearly proved, and parties should not be readily made responsible as wrong-doers when their action has been invited by the possessor.

The extraordinary shifting of claims from sale to mortgage and the complications caused by allowing both claims, which are clearly inconsistent with each other, to go into the case together, so that one may stand if the other falls, make it difficult to deal with the controversy. We are strongly inclined to think that no such inconsistent grounds can be allowed to be urged against such a levy. But as the case must go back for a new trial, this, as well as some other matters not as plainly presented by the record as they might be, will probably be examined by court and counsel.

Judgment must be reversed with costs and a new trial granted.

The other Justices concurred.