| | |
|---|---|
| 42 | 597 |
| 71 | 7 |
| 42 | 597 |
| 86 | 560 |

| | |
|---|---|
| 42 | 597 |
| 105 | 621 |
| 42 | 597 |
| 108 | 318 |

### JOHN W. KING v. THOMAS M. HUBBELL.

*Attachment of mortgaged chattels—Right of possession—Good faith of mortgage—Execution sale.*

A man began business on money borrowed from his father shortly before, and although neither had reason to suppose he had made money, the father sold him at par a quantity of worthless railroad stock, took a mortgage on his stock in trade for an amount that would have nearly exhausted it, and left him in possession

to sell the goods in the course of business. The goods were seized on an attachment by the son's creditors and the father brought replevin for them. *Held* that on these facts the case should have gone to the jury on the question of the good faith of the mortgage.

The fact that part of a mortgage debt is valid and unquestioned does not necessarily preclude any question as to the good faith of the mortgage.

It is a badge of fraud if a chattel mortgage is given and received for much more than is due the mortgagee ; and it is fraud in law if the purpose is to protect the debtor's interest from other creditors.

Under Comp. L., § 6401, personal property covered by a mortgage may be taken on an attachment against the mortgager.

It is not a condition precedent to the sale on execution of property mortgaged by the defendant therein, that the execution creditor should have paid off the mortgage and thus acquired the mortgager's interest.

Where execution is levied on mortgaged chattels, sale must be so made as to preserve the mortgagee's lien ; the property cannot be sold in parcels, but must be sold altogether, subject to the mortgage.

Where mortgaged chattels are attached in a suit against the mortgager, the rights of the attachment creditor and of the mortgagee must be protected as far as possible without interfering with each other. The officer need only take temporary possession for the purpose of making an inventory and appraisement, which perfects his lien, and his right to take such possession cannot be defeated by any stipulation in the mortgage that the mortgagee may take possession when he deems himself insecure. But the mortgagee has the first lien, and having a right to foreclose at a definite time, is entitled to possession, which the officer should then surrender to him on demand unless he believes the mortgage to be fraudulent or satisfied, in which case he may refuse to recognize it. · If he surrenders it, the mortgagee must also respect the subsequent lien, and the mortgager's release to him would be ineffectual.

Where a mortgagee secures future liabilities and the mortgaged property is attached, the creditor increases his demands at his peril, for the attachment is of the mortgager's interest as it then stands, and he cannot diminish that interest to the creditor's detriment.

Authority from the mortgagee of chattels to the mortgager to go on and make sales of the mortgaged goods in the usual course of business would be ended by the levy of an attachment on them.

Error to Iosco.   Submitted Jan. 8.   Decided Feb. 11.

REPLEVIN by Hubbell for goods seized by King under a writ of attachment. Hubbell claimed them under a chattel mortgage given him by his son two days before the attachment issued, to secure him for indorsements and for the purchase price of a quantity of railroad stock which he had shortly before sold his son at par. The goods constituted the latter's stock in trade. Plaintiff recovered and defendant brings error.

*Seth G. Huckins, Horace E. Burt* and *Atkinson & Atkinson* for plaintiff in error.

*D. P. Foote* and *Benton Hanchett* for defendant in error.

COOLEY, J. We are not satisfied that the circuit judge was justified in taking this case from the jury on the facts. It cannot be said that there were no facts and circumstances in evidence calculated to cast suspicion on the *bona fides* of the mortgage. The mortgagor was the son of the plaintiff below, and according to his own evidence had started in business on money borrowed from the plaintiff but a short time before, and there is nothing in the case to show that either father or son had reason to believe that the son had made money in his business. Under these circumstances that the father should sell to his son $1500 of railroad stock at par when it had no market value, and apparently no intrinsic value, and take for it a mortgage on his son's stock in trade, was certainly a very extraordinary transaction, and might have been expected to result as it did, in the father soon claiming the goods on his mortgage, while the parties who supplied the goods on credit were left to look to the worthless railroad stock for their satisfaction. The trade may have been perfectly honest, and it is not our province or intention to raise any question of that; but if a jury were to conclude that it was entered into for the purpose of relieving the father of his railroad investment at the expense of the son's creditors, it could not be said that there were no cir-

cumstances favoring that view.    This, and some other. circumstances which we need not refer to, fairly entitled the defendant to go to the jury on the facts.

The circuit judge was laboring under a misapprehension when he assumed that if any portion of the mortgage debt was valid and unquestioned, that fact must put an end to all controversy as to the validity of the mortgage.    That fact would by no means preclude the *bona fides* of the mortgage being called in question.    This mortgage was upon a merchant's stock in trade; and the nominal amount seems to have been sufficient to exhaust the stock or nearly so.    It was sufficient, at any rate, to deter creditors from any attempt to collect their debts unless they believed they could successfully assail its validity.    If the mortgage was in fact given and received for any considerable sum more than was fairly and honestly due to the mortgagee, this of itself would be a badge of fraud, and if the purpose was to keep the debtor's interest in the goods from being reached by other creditors, it would be fraud in law.    And the fact that the debtor was allowed to remain in possession of the goods and make sales in the ordinary course of business would be a circumstance tending to show that the mortgage in its inception had a purpose beyond securing the mortgagee's demand.    And this view would be strengthened rather than weakened by the plaintiff's explanation of his claims on his son; for this, if accurate, would show that the son must from the very start have been unable to meet his engagements, and that any credit which his father's assistance to him gave was deceptive.

The principal question in the case, however, is whether personal property covered by a chattel mortgage is subject to be taken on attachment against the mortgagor. The circuit judge held that it was not.

No question is made that property thus situated is subject to be taken in execution.    The statute expressly

provides that "when goods or chattels shall be pledged by way of mortgage or otherwise, for the payment of money, or the performance of any contract or agreement, such goods or chattels may be levied upon and sold on execution against the person making such pledge, subject to the lien of the mortgage or pledge existing thereon" (Comp. L., § 6097); and although the statute provides further that the execution creditor may pay off the mortgage or satisfy the terms and conditions of the pledge, and thereby acquire the interest of the mortgagor or pledgor, yet this is not intended to be and is not a condition precedent to an execution sale. *Cary v. Hewitt*, 26 Mich., 228.

But it is contended on behalf of the plaintiff below that this statute is expressly limited to levies and sales on execution and cannot be extended by construction; that a levy by virtue of an attachment is not within its terms, and if the statute were by construction extended to cover the case, the levy would be wholly inconsistent with the legal interest of the mortgagee or pledgee, and in many cases would result in serious injury to if not destruction of his lien. The levy of an execution must be followed immediately by a sale, and can therefore only displace the mortgagee's or pledgee's right to possession for a brief period, and at most only subject him to temporary inconvenience. On the other hand it is justly said that when property is seized upon attachment the law fixes no time within which it must be brought to sale, and it may never be brought to sale, as judgment may never be rendered against the defendant. If the officer can detain the property after a breach of the condition of the mortgage, and after demand therefor, there is no practical limit to the time he may detain it, since the parties to the suit—in which the mortgagee cannot be heard—may delay a judgment as long as they please.

There is much force in these objections. In *Lyon v. Coburn*, 1 Cush., 278, which is cited in support of a

strict construction of the statute, it was held that a statute authorizing the levy of an attachment on mortgaged chattels would not justify their being taken in execution. But as an attachment would be worthless unless it conduced in some manner to the collection of the debt for which it was levied, it may be doubted if the court would have so held if it had not appeared that under the laws of Massachusetts there were other means of rendering the levy available. It was in fact found that the intent of the legislature in permitting the mortgaged property to be attached could be fully effectuated, without extending in the least its express terms.

But the attachment law of this State expressly provides that the writ of attachment "shall command the sheriff, or other officer to whom it may be directed, to attach so much of the lands, tenements, goods, chattels, moneys, and effects of the defendant not exempt from execution, wheresoever the same may be found within the county, as will be sufficient to satisfy the plaintiff's demand." Comp. L., § 6401. The case is therefore clearly within the terms of the statute; for if the section is applied literally, and according to its apparent meaning, the officer has only to look for property subject to execution, and he may attach whatever he finds. It is said, however, that this provision came into our law in 1846, while the statute authorizing a levy on mortgaged property was only passed in 1861, and that the former must be construed in the light of statutes regulating levies on execution when it was adopted. But as this very provision in the attachment law was amended and re-enacted in 1869, the argument that might otherwise have been plausible falls to the ground. It plainly, as we think, intends that whatever is subject to execution is subject to attachment also.

We fully appreciate the difficulties that may arise in protecting the interest of the mortgagee when the levy of attachment is made; but it is not uncommon that a statute giving a new or further remedy introduces sim-

ilar difficulties. If a new or further right is clearly given, it becomes the duty of the court to give effect to the legislative intent with as little disturbance as possible to the rights of others, and to harmonize all so far as may be practicable. Even in the case of execution levies, it has been found that the peculiar relations of the parties to the property would necessarily modify the officer's course of proceeding to a sale, and that he must so sell as to keep intact the mortgagee's lien. This he could not do if he sold the property in parcels; and he must therefore sell the whole subject to the mortgage. *Worthington v. Hanna*, 23 Mich., 530; *Haynes v. Leppig*, 40 Mich., 602.

The difficulty that the levy by attachment introduces is, that it may be a long time—perhaps several years—before a judgment will be obtained and execution issued, and the mortgagee's interest must be seriously impaired or perhaps destroyed if in the meantime he is excluded from possession. And it is not clear that the mortgagee, when the mortgaged property is taken from the mortgagor, can have it returned to him on giving bond; for the statute appears to contemplate the giving of a bond for that purpose only by "the defendant or any other person in whose possession such property may have been found." Comp. L., § 6409. But we do not think that it is absolutely essential for the purposes of his levy that the officer should take more than a temporary possession. It is true that the statute apparently contemplates that he shall do so in all cases (Comp. L., § 6402); but as is said above, the various provisions of the statute must be so harmonized as to protect all rights; and when the officer's possession, if taken, must continue indefinitely, it is clear that the mortgagee's rights cannot be fully protected if such provision is allowed.

There is no doubt of the right of the officer to take possession of the property so far as may be necessary for the purposes of an inventory and appraisement. This establishes and perfects his lien, and no provision

in the mortgage whereby it is stipulated that the mortgagee may take possession when he deems himself insecure can defeat this right. *Wing v. Bishop*, 9 Gray, 223. If the officer believes the mortgage to be fraudulent or satisfied, he may then refuse to recognize it (*Angier v. Ash*, 26 N. H., 99); but if he concedes its validity, it will not be necessary for his protection that he should retain possession. The mortgagee, as having the first lien, and as being entitled to foreclose it at a definite time, is fairly entitled to the possession, and the sheriff should surrender it on demand. But the levy must necessarily to some extent modify the mortgagee's rights. He must respect the subsequent lien in whatever he shall do in regard to the property afterwards. A release by the mortgagor to him afterwards would of course be ineffectual. *Wentworth v. Leonard*, 4 Cush., 414. And if the mortgage is given to secure, wholly or in part, liabilities to accrue thereafter, the creditor would at his peril increase his demands further; for the attachment is of the mortgagor's interest as it then stands, and he can have no power to diminish that interest afterwards to the creditor's detriment. *Ladue v. D. & M. Railroad Co.*, 13 Mich., 380. And in respect to anything done by the mortgagee afterwards which would injure the lien of the attaching creditor, the latter, or the officer representing his interest, would be entitled to whatever remedy would be appropriate.

The case does not call for any further discussion of the relative rights of the parties, and it would be premature to assume to anticipate difficulties. We think the property was attachable, because the statute makes it so. But we also think that, unless the attaching creditor disputed the validity of the mortgage, the officer was under obligation to surrender possession to the mortgagee on demand, after his inventory and appraisal were completed. From that time the respective parties must each so assert and exercise their rights as not needlessly to injure the interest of the other. Of course

any authority in the mortgagee to permit the mortgagor to go on and make sales in the usual course of business would be terminated by the levy of attachment.

These views are to some extent foreshadowed in *Haynes v. Leppig*, 40 Mich., 602, to which we refer.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.