## NORRIS and others *v.* McCANNA.

*(Circuit Court, W. D. Michigan, N. D. December, 1886.)*

1. FRAUDULENT CONVEYANCES—INTENT—QUESTION FOR JURY—HOW. COMP. ST. MICH. § 6206.

Under How. Comp. St. Mich. § 6206, the question of the intent in conveyances alleged to be fraudulent is one of fact, and not of law; and, where a conveyance of his stock in trade by a married man to his wife is impeached as fraudulent, the value of the stock being largely in excess of the claims of the wife for advances to the husband, it is not error to refuse to charge that that fact is a "badge of fraud," and that the jury might find from that fact that the transfer was fraudulent and void, the jury having been instructed that such facts were for their consideration in determining whether there was fraud or not.

2. ESTOPPEL—BY CONDUCT—TROVER AGAINST SHERIFF—CONSENT TO LEVY.

Where the sheriff's certificate made no mention of the mortgage, nor indicated any lien subject to which the levy was made, the mortgagee of a stock of goods attached by creditors of the mortgagor is not estopped, in trover against the sheriff, from maintaining that the taking, under the attachment, was tortious, by the fact that his attorney consented to the levy, provided it should contain a recognition of the mortgage.

3. SAME—HUSBAND AND WIFE—PARTNERSHIP—DEBTOR AND CREDITOR.

While the facts that a married woman, apparently occupied as a helper in the same shop where her husband had his general store, had asserted no claim of interest in the goods, but on the contrary had suffered him to deal with them as his own, might estop her from claiming, as against creditors of the husband who had attached the stock, that she was a partner, and so entitled to an interest, when her assertion of an interest in it would disappoint the creditors, who had become such while the appearances held out were that the property was that of the husband, yet she is not estopped from asserting against such creditors that the husband was a debtor to her for actual advances to him as a loan.

4. TROVER AND CONVERSION—TORTIOUS TAKING—DEMAND.

Where a transfer of goods by a debtor, on the fraudulent character of which attachments are based, is shown to be *bona fide* and valid, the taking under the writs is tortious, and a prior mortgagee of the goods may maintain trover against the sheriff without demand.

5. PARTNERSHIP—QUESTION FOR JURY.

When there is nothing in the testimony which would warrant the jury in finding that a husband and wife were partners, more than a vague recognition by the husband of an interest in the wife, (not amounting to a legal one,) and a sort of moral lien for the amount of the money of the wife which she had permitted the husband to invest in the business, the question of partnership between them should not be submitted to the jury.

6. SHERIFF—SEIZING MORTGAGED GOODS—MEASURE OF DAMAGES—HOW. COMP. ST. MICH. § 7682.

A sheriff who, with actual notice of an existing mortgage, *prima facie* valid, on a stock of goods, attaches the goods at the suit of creditors of the mortgagor, who claim that the mortgage is fraudulent and void, and takes and maintains possession of them, in disregard of the mortgage, instead of seizing the property subject to the mortgage, and keeping possession only so long as was necessary to appraise and inventory it, and then returning it, if required, to the mortgagee, as provided by How. Comp. St. Mich. § 7682, is liable in trover, at the suit of the mortgagee, in damages to the amount of the mortgage, not exceeding the value of the mortgaged property.

7. SAME—NO INDEMNIFYING BOND—HOW. COMP. ST. MICH. § 7711.

The failure of a sheriff to take from attaching creditors the bond of indemnity provided for by How. Comp. St. Mich. § 7711, is his own neglect, and cannot be allowed any consideration to relieve him from liability for damages resulting from a wrongful seizure.

8. SAME—ORDER OF COURT BASED ON VOID LAW—LAWS MICH. 1883, No. 193.

The fact that No. 193, Laws Mich. 1883, was unconstitutional and void, will not render a sheriff liable who obeyed a mandate of the court, made under authority of that act, and turned over to a receiver property which he had attached.

9. SAME—DAMAGE BY FIRE.

A sheriff is not liable for the damage to attached goods in his possession, done by fire, although his seizure was wrongful, where it appears that the fire was accidental and was not caused by his negligence.

Trover. On motion for new trial by defendant.

*Ball & Hanscom*, for defendant.

*Messrs. Riggs* and *Mapes*, for plaintiffs.

SEVERENS, J. This cause was an action of trover, counts in case being also joined in the declaration, tried at the last term of the court held at Marquette, in which the plaintiffs recovered a verdict. The substantial facts in the case were as follows:

One Smith, having been engaged in the business of carrying on a general store at Manistique, had become indebted for purchases of stock to various parties, and, among them, the plaintiffs. There was also carried on in the same store a small line of jewelry business, which his wife, who occupied the store with him, had under her more especial management. The debt to the plaintiffs was for a considerable amount, and, feeling uneasy about it, they lodged their claim with R. G. Dun & Co.'s collection agency, at Chicago, for collection. Some part of the debt was not quite due, but would mature in a few days. The claim was transmitted to W. F. Riggs, an attorney at Manistique, and he, on the twenty-first day of November, 1883, procured a chattel mortgage from Smith upon the general stock in the store, and also upon the jewelry; Mrs. Smith joining in the chattel mortgage, on account of a claim which she asserted in the jewelry. This mortgage ran to the plaintiffs, and, in terms, secured the payment of Smith's debt to them on the first

day of December then following, and was immediately filed. The day after the giving of this mortgage Smith transferred to his wife his remaining interest in the mortgaged goods, in satisfaction of a debt due, as they both assert, from him to her, on account of moneys which she had advanced, and which had gone into the business. The amount of these advances, with the interest thereon, fell far short of the actual value of the interest thus transferred to her.

On the day succeeding this transfer, the defendant, who was sheriff of the county, levied two writs of attachment against Smith, and in favor of other creditors, on the mortgaged goods. There was a conflict in the evidence upon the trial as to whether these levies by the defendant were intended by him to be in defiance of the mortgage given to the plaintiffs, but the preponderance of the evidence tended to show that the sheriff, and the creditors whose writs he had, believed the mortgage to be fraudulent and void as to creditors, and that they therefore refused to recognize it. The sheriff's certificates do not mention the mortgage, or indicate any lien to which the levies were made subject. The goods were taken by the sheriff into his possession, and were removed by him from the store to another part of the village. The goods were inventoried and appraised. The evidence for the plaintiff tended to show that, after the inventory and appraisal, and after the mortgage became due, a specific demand was made in behalf of the plaintiffs upon the sheriff for the possession of the goods, and that the sheriff flatly refused to recognize any right in the plaintiffs under their mortgage. The defendants denied that such demand was made upon him, and insisted that his possession was assented to by Riggs, who represented the plaintiffs. At length an order was made by the circuit court of Schoolcraft county that the sheriff transfer these goods to a receiver appointed under the state law in reference to assignments. Act No. 193, 1883, since declared unconstitutional by the state supreme court in *Risser* v. *Hoyt,* 53 Mich. 185; S. C. 18 N. W. Rep. 611. Meantime, or rather before the order was executed, a part of the goods were destroyed by fire. The remainder were turned over to the receiver, disposed of by him, and the proceeds distributed to the creditors, the plaintiffs, however, not participating. This action was then brought.

The recovery by the plaintiffs was for $1,354.45, being the amount secured by the chattel mortgage. No question was raised but that the value of the goods exceeded the plaintiffs' debt. A motion having been made for a new trial, argument thereon has been heard, and most of the grounds and reasons urged in behalf of the defendant have been already disposed of, leaving only the following questions for further consideration:

Upon the trial the counsel for the defendant presented a series of requests for instructions to the jury, which, grouping together certain features of the case, upon which argument could be made against the validity of the mortgage, and of the transfer from Smith to his wife, asked the court to instruct the jury that such circumstances constituted "badges of fraud," or, as in some of the requests, rendered the transaction fraud-

ulent and void as to creditors. The following, which is defendant's nineteenth request, is an example: "The fact appearing from Mr. and Mrs. Smith's testimony that the property transferred to her was largely in excess of Mrs. Smith's interest in the goods, or her claim, is a badge of fraud, and you may find from that fact that the transfer was fraudulent and void." The court refused such requests, holding that the question of the alleged fraudulent intent was one of fact wholly, and was for the jury to determine, upon all the evidence in the case; that while it was laid down as law in text-books that such facts as were embodied in these requests constituted "badges of fraud," still the court held that such expressions involved conclusions of fact as well as of law, and were of a class which Judge CAMPBELL, in *Watkins* v. *Wallace*, 19 Mich. 77, calls "technical and stock phrases of the bench and bar." The court was of opinion that, to charge as requested, would be to invade the province of the jury; and would practically go far towards turning such questions into matters of law instead of treating them as questions of fact. The court simply directed the attention of the jury to these features of the case, and instructed them that these, and all the facts, were for their consideration in determining whether a fraudulent intent inspired the transaction.

This action of the court in refusing the requests, and leaving the question of fraud to the jury, without any instruction as to whether these parts of the testimony tended to show fraud, is complained of, and made a ground of this motion for a new trial. But after full consideration, I am satisfied that the course taken on the trial was correct. The statute of Michigan (How. Comp. St. § 6206) declares that the question of fraud in such transaction shall be one "of fact, and not of law," and without such statute it is essentially so. The deduction of actual intent from circumstances proved is logically an inference of fact, and not of law. When the fraudulent intent appears upon the face of an instrument which the court is called upon to construe and give effect to, it becomes a matter of law, like all other matters thus coming into a case; but where the evidence is of facts, resting in parol, the jury are to say what are the inferences reasonably to be drawn.

The result is, in the language of the court in *Gay* v. *Bidwell*, 7 Mich. 519, 524, "to leave to the jury the duty of drawing all necessary inferences from facts." See, also, *Oliver* v. *Eaton*, 7 Mich. 108, where the court, adopting the doctrine of *Smith* v. *Acker*, 23 Wend. 653, declared it to have been the accepted rule in this state. It may be that cases may arise where the proof is so overwhelmingly one way that the court would be called upon to give explicit direction to the jury to find accordingly; but this is quite another matter, and such practice is not peculiar to any class of cases.

Another question, which was reserved for further consideration, was whether an error was committed by the court in charging the jury that, if they found the transfer from Smith to his wife to have been *bona fide* and valid, then the levy of the writs by the sheriff on these goods was without justification, and would not warrant any assumption of control

over them, the goods not being those of the defendant in the writs; and that, in such case, no demand was necessary to be made upon the sheriff for the possession before bringing this action.

This instruction is complained of on two grounds:

*First.* It is said that the testimony of Riggs shows that at the time the levies were made he assented thereto, and no doubt he testified that he assented to the levy, if it was made in recognition of the mortgage he had in charge for the plaintiffs. If that assent had been acted upon by the sheriff, it ought to follow that the plaintiffs would now be estopped from claiming that the taking was tortious. But the truth was that the sheriff was not led to make the levies by any assent of Riggs, and the levies would have been made whether he assented or refused. The defendant did not, therefore, take his course upon the footing of any consent of Riggs. But a more satisfactory answer is that the condition of the assent was wanting, which was that the levy should be in recognition of his client's mortgage. The defendant could not be heard to say that he relied upon the assent thus given, and repudiate the condition on which it was given. It is not conceivable that Riggs assented to the levy without the condition. If he did, it would have been such an open betrayal of his client's rights as to have deprived his act of any quality of agency.

*Second.* It is claimed that there was testimony which warranted the conclusion that Mrs. Smith was a silent partner with her husband in the business, and that, if so, the goods were liable to be seized on the writ against him; and authority is cited to the proposition that when goods have been sold to a copartnership which includes a silent partner, not known to the seller at the time of the sale, the writ against the known members will authorize the seizure of the entire property in the partnership goods, and that the silent member is estopped from making any claim to ownership, and from objecting to the seizure, on the ground that he was not made party to the suit. Lindl. Partn. §§ 482, 483, and notes; Pars. Partn. 290, 291. But here there was nothing in the writs, nor in the judgments, nor indeed in any part of the records, to show that the suit was against any partnership, nor against any other than Smith as an individual merely.

The case of *Inbusch* v. *Farwell*, 1 Black, 566, cited for the defendant, is not in point. There the suit was one professedly against a partnership. It appeared to be so on its face. The court held that the plaintiff, having discontinued as against two of the three partners because they were not in the jurisdiction, could take judgment against the third, and that execution thereon could be levied on partnership property.

It is easy to see how Mrs. Smith might be estopped from claiming she was a partner, when she had allowed her husband to use the property as his own, and when her assertion of a claim upon it would disappoint creditors who had become such while the appearances held out were that the property was that of the husband. But if she is estopped from claiming that she was a partner, and so entitled to an interest, she ought not to be estopped from asserting that her husband was a debtor to her, if such was the fact, for her actual advances to him as a loan. I

cannot find the elements in the case necessary to create such an estoppel. She has not, in such case, helped to deceive any one, more than in the case of another person who might have loaned him money without recorded security; and, of course, it cannot be pretended that there would be an estoppel in the latter case. The argument amounts to this: that Mrs. Smith is estopped from saying she was a partner, because her conduct denied it; and she is estopped from saying she was not a partner, because in truth she was. If the estoppels work both ways, she was in a dilemma, from which there was no escape but sacrifice. But while it has been plausibly urged, I do not think there were any facts in the case which should prevent Mrs. Smith from obtaining satisfaction for the advances she had made. They never claimed to be partners, and do not now. The defendant's claim that she was, is founded upon evidence of some loose and uncertain understanding between them that she had an interest in the goods to the extent of the advances, and that they shared the profits in some way, but in what proportions is not shown.

My opinion was and is that there was nothing in the testimony which would warrant the jury in finding that the husband and wife were in partnership. It was a vague recognition of an interest, not amounting to a legal one, nor having any defined scope or limits, but a sort of moral lien for the amount of the money she had permitted her husband to use. If, on such testimony, the jury should have found a partnership, such finding must have been set aside. It therefore could not properly be submitted to them. *Improvement Co.* v. *Munson*, 14 Wall. 442; *Schofield* v. *Chicago, etc., Ry.*, 114 U. S. 615, and cases cited at page 619; S. C. 5 Sup. Ct. Rep. 1125.

Finally, it appears to me that the verdict cannot be said to be contrary to legal justice in the case. The preponderance of the evidence went strongly to prove that, having constructive and actual notice of the plaintiffs' mortgage, the defendant proceeded in spite of it, and chose to make his levies, and take and maintain possession in disregard of it. Under the statute, he could have seized the property subject to the mortgage, and kept possession as long as necessary to appraise and inventory it, and then have restored possession, if required, to the mortgagee. How. Comp. St. § 7682; *Bayne* v. *Patterson*, 40 Mich. 659; *King* v. *Hubbell*, 42 Mich. 597, 603; S. C. 4 N. W. Rep. 440; *Wood* v. *Weimar*, 104 U. S. 786.

The mortgage was *prima facie* valid, and if the sheriff felt willing to act upon the claim of the parties whose writs he had, that the plaintiffs' mortgage was fraudulent and void, he could, as he ought to, have called upon those parties for indemnity. How. Comp. St. § 7711; *Smith* v. *Cicotte*, 11 Mich. 383. If he failed to do this, it was his own fault and negligence; and, while he is to be commiserated for his folly, he is in no situation to ask that the consequences of his proceedings should be visited upon others. Of course, the defendant is not liable for obeying the mandate of the court in turning over the goods to the receiver. Notwithstanding the law was void under which the court took that action, its order, remaining unrevoked, was obligatory upon the sheriff, and he

could not gainsay it.   *Wall* v. *Trumbull*, 16 Mich. 233, and the cases there cited.   Nor was he liable for the loss by fire, unless upon the ground that his wrongful act brought the goods within its reach, for it is not shown to have occurred through negligence on his part.   The conversion, if it took place, was considerably prior to that time, and the rights of the parties had become fixed.   I am therefore of opinion that the verdict of the jury upon the facts ought not to be disturbed, and that the judgment is in accordance with legal right.

The motion must be overruled.