TEFFT et al. v. STERN.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 348.

**1. Fraudulent Conveyances—Innocent Parties.**

A mortgage made to a trustee to secure several distinct debts owing to different creditors is not rendered void, as to such of the creditors holding valid claims as are without notice or knowledge of any fraudulent purpose in the making of the mortgage, by the fact that there was such fraudulent purpose on the part of the mortgagors, participated in by the remaining creditors.

**2. Same—Pro Rata Shares.**

Where a mortgage is made for the security of several creditors, the claims of some of whom are invalid, the remaining creditors are not entitled only to the pro rata share which would have gone to them, respectively, if all the claims had been valid, but are entitled to their shares of the whole of the mortgaged property, up to full amount of their respective claims.

**3. Practice—Garnishee's Costs—Michigan Statute.**

The statute of Michigan, permitting the allowance of costs and expenses to a garnishee (How. Ann. St. § 8098), does not include cases where an issue is made between a creditor and a garnishee, and a trial is had thereon.

Error to the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

Hiram A. Fletcher, and George P. Wanty, for plaintiffs in error.

Howard & Roos and Boudeman & Adams, for defendant in error.

Before HAMMOND, J., and BARR and SEVERENS, District Judges.

BARR, District Judge. This was a proceeding by the plaintiffs in error against the defendant in error, under a writ of garnishment, under a Michigan statute, to make the garnishee liable to the plaintiffs' judgment for the sum of $3,728.19, upon the theory that a chattel mortgage, executed on the 18th of September, 1893, by Charles Livingston and Henry Block, partners, under the firm name of Livingston & Block, to the defendant in error, Henry Stern, was fraudulent and void. The issue was tried before Judge Lurton and a jury, and a verdict found, under his instructions, for the defendant in error. A judgment was rendered upon that verdict against the

plaintiffs in error for the usual legal costs; but subsequently, on motion of the defendant in error, Stern, this judgment for costs was amended, and he was allowed his attorney's fees, together with his personal expenses arising out of this litigation, amounting to $1,-201.50. Plaintiffs in error have filed many assignments of errors which are unnecessary to consider, as the real questions involved are whether or not the trial judge was correct in instructing the jury peremptorily to find for the defendant in error, Stern, and whether the judgment for costs should have been amended so as to allow him his attorney's fees, expenses, and costs.

This chattel mortgage was in the usual form, and there is nothing on the face of it which makes it a void instrument. It was given to Henry Stern, trustee, to secure certain debts, which were evidenced by notes and all of which were valid debts, so far as the record shows. These debts are as follows: One to the Michigan National Bank, Kalamazoo, for $7,500; one to the Kalamazoo National Bank for $2,500; one to Caroline Nathanson, who was a sister of Charles Livingston, for $3,000; one to Daniel Goldstein for $1,-500; one to Benno Desemberg for $3,114; one to Aaron Livingston, brother of Charles Livingston, for $2,620.18; one to Sigmund Livingston for $100; one to Herman Goldstein for $1,500; one to R. Livingston, brother of Charles Livingston, for $1,971.71; and also to secure the liability of B. N. Desemberg for $3,000 on said debt to the Michigan National Bank, and S. Stern on same debt for $1,000, Herman Stern on said debt for $1,000, and Jacob Levy on said debt for $2,000; and Herman Goldstein, as surety on note to the Kalamazoo National Bank, for $2,500.

After a careful consideration of the evidence presented to the jury, we concur with the trial judge that there was no evidence which tended to prove that the trustee, Stern, had any knowledge of, or participated in, any intended fraud, if there was such an intention upon the part of the mortgagors, Livingston & Block, in making said mortgage, or any knowledge of or participancy in any conduct of said Livingston & Block, previous to the making of said mortgage, which would indicate a fraudulent intent upon their part, either in buying an excessive amount of goods, or in secretly selling or shipping goods to their creditors or others before the execution of said chattel mortgage; and that there was no evidence, sufficient to go to the jury, which proved or tended to prove that the officers of the Michigan National Bank, or the officers of the Kalamazoo National Bank, or Benno Desemberg, or Caroline Nathanson, or Herman Goldstein, or S. Livingston had any knowledge of, or participated in any way in, the fraudulent acts or purposes, if there were such, of Livingston & Block, Daniel Goldstein, Aaron Livingston, or Resiel Livingston. We think it may be fairly assumed, as was assumed in the charge by the trial court, that there was sufficient evidence to go to the jury upon the question of whether or not these three creditors, Aaron Livingston, Resiel Livingston, and Daniel Goldstein, and Livingston & Block, had a fraudulent purpose in paying part of said creditor's debts by secretly shipping to them goods out of their stock of goods a short time prior to the execution of

said chattel mortgage, and to determine whether or not, as to them, the execution of said chattel mortgage was fraudulent.

This raises the question, if it be assumed that Livingston & Block and their three said creditors had a fraudulent intent, which was executed in part by the execution and delivery of this chattel mortgage, whether that made the entire mortgage void, and prevented the property in the hands of the trustee, Stern, from being applied to the payment of the valid debts which were held by these other parties who were entirely innocent.

The theory of the plaintiffs in error, as stated in their brief, is:

"That Livingston & Block, in the summer of 1893, became aware that they had lost money during the prosperous preceding year, and were convinced that they must within a short time fail, and they then commenced the fraudulent scheme of getting into their possession, wihout paying for them, a large quantity of goods from every available source, and selling as many of these goods as they could for money, which they kept, and, when it became necessary, execute the chattel mortgage in question for the purpose of keeping off the creditors, and place the trustee in the possession of their stock, and selling it to one of Livingston's brothers, thus defrauding their merchandise creditors, and still having possession of the goods."

This theory, however, is not sustained by the evidence, in that it is not shown that they kept the money which they received for their goods, nor is it shown that the purchase of the remainder of the stock by one of Livingston's brothers, six months after the execution of the chattel mortgage, was to defraud merchandise creditors. On the contrary, the sale to Resiel Livingston, in February, 1894, was at public auction, after selling at retail had ceased to be profitable, and his bid was kept open for several days, to give all parties in interest an opportunity to object or to advance upon his bid. The price paid, though low, was not inadequate, under the circumstances. So that we think the only question is whether or not the court erred to the injury of the plaintiffs in error in not submitting the question of fraud or no fraud in regard to the three creditors mentioned. This mortgage was made to a third party as trustee, who was innocent of any fraud, or knowledge of any intended fraud, to secure nine creditors, three of whom might, by the finding of a jury, have been secured with a fraudulent intent. The other six were entirely innocent of any knowledge of or participancy in this fraud. This being the case, we concur in the view that the mortgage as to the other six creditors was valid. We think the mortgage to this trustee should be regarded as if it were a separate mortgage for the benefit of each of the creditors.

It is insisted that this case must be governed by the Michigan rule on this subject. This is true, we believe. Etheridge v. Sperry, 139 U. S. 277, 11 Sup. Ct. 565. And it is insisted that by this rule the fraudulent intention, if there was any, between Livingston & Block and the three creditors (the two Livingstons and Goldstein), made the entire mortgage invalid. We think the Michigan cases do not sustain this contention.

In Walker v. White, 60 Mich. 430, 27 N. W. 554, it was said:

"The mortgage was so drawn as to specify the amount of indebtedness to each creditor specifically, and the plaintiff was by its terms made trustee

for the collection and payment of the amount owing to each. There is no legal objection to such a mortgage. Adams v. Niemann, 46 Mich. 137, 8 N. W. 719. And we think each mortgagee could enforce his own claim under the mortgage, his separate debt being clearly stated. Herm. Chat. Mortg. 337; Burnett v. Pratt, 22 Pick. 556; Gilson v. Gilson, 2 Allen, 115."

The court in that case declared the mortgage valid which was given to a trustee of partnership assets to pay partnership creditors, and included therein a personal debt owing by one of the partners. The fact that it was a personal debt was known to the trustee when the mortgage was executed, and the court held that, notwithstanding this debt was included and the knowledge of the trustee, the mortgage was valid to the extent of the firm creditors.

The case of Adams v. Niemann, supra, which case is referred to as sustaining the plaintiffs' contention, was unlike the case at bar in that it was not to a trustee, but the mortgage was given to Niemann & Jochem jointly. It was claimed that it was fraudulent as between the mortgagor and one of the mortgagees. The court below said to the jury that if the mortgage was given to secure an honest transaction, debt, or liability, and if it was not given for the sole purpose of hindering and delaying the other creditors of Ernest Jochem, it was valid. This, the supreme court said, in passing, was erroneous, and used this language:

"If this had been the entire charge on the subject, it is undoubtedly open to misapprehension. We have no doubt a partial wrongful purpose may be such as to stand in the way of such a security; but the court, in giving further instructions, put it beyond any doubt that there was no erroneous conclusion justifiable under the whole charge. It was clearly and distinctly laid down that honesty on the part of one of the mortgagees would not save the instrument, if there was any wrong or fraud on the other, and the jury, by special findings, made the instruction unimportant. They found that neither of the mortgagees took the mortgage with any unlawful intent. And, further, they found that the debts intended to be secured were somewhat larger at the date of the mortgage than the whole sum secured, which was $5,000. A mortgage taken without fraudulent intent, to secure no more than the actual debt of the mortgagee, is not open to an attack as fraudulent."

And then the court decided the case upon another question, which was the important question,—that is, whether or not a joint mortgage could be made to cover separate debts.

In the case of Showman v. Lee, 86 Mich. 557, 49 N. W. 578, the mortgagor, Elder, was the mortgagee's son-in-law, and the mortgage was given to secure indorsements on notes, and also a direct debt. The court say:

"The court [the trial court] instructed the jury that, in any event, the mortgage was good for the amount of the indorsed notes, whether the personal indebtedness was bona fide or not. This was error. Parties who take securities from insolvents, or from persons who are indebted to others, must act in good faith, and so as not to unnecessarily hinder, delay, or deceive other creditors. The taking of the mortgage for an amount in excess of the debt of the assumed liability is a badge of fraud, and is a fraud, in law, if the purpose is to protect the debtor's interest from other creditors. King v. Hubbell, 42 Mich. 597, 4 N. W. 440 To say that a party who assumes a liability may take a mortgage in excess of the amount necessary for his security for the purpose of hiding the debtor's interest from other creditors, and, when the fraud is exposed, may have the benefit of the mortgage to protect himself, would open the door to gross abuses."

This was a case in which the mortgagor and mortgagee, if there was a fraud, both participated in it, and is unlike the case at bar.

These two cases are the strongest cases that have been cited, or that we have found, tending to sustain the plaintiffs' contention, and they are markedly different from the case at bar in the fact that the mortgagees who received the mortgage, and held the title and rights which the mortgage gave, were the beneficiaries either in part or in whole. Here these six creditors, as well as the trustee, are entirely innocent of any knowledge of or participancy in the alleged fraud in regard to the other three.

The case of Morris v. Lindauer, 54 Fed. 23, 6 U. S. App. 510, 4 C. C. A. 162, decided in this court, is, we think, a case in point upon this question. There the question was whether or not a chattel mortgage, which was made on the 19th of April, three days prior to the making of a general deed of assignment, which was made on the 22d of April, the chattel mortgage being in favor of the National Bank of Manistee and several creditors of the mortgagors, was made in contemplation of the assignment, and was part of the scheme to unlawfully prefer these creditors. If so, it was within the provisions of the Michigan statute which prohibited preferences. The court said:

"It is necessary, in order to invalidate the mortgage on this ground, that the mortgagee should have had notice of the mortgagor's intention; and, for the purpose of testing the question whether such notice was had, I think that, under the circumstances of the case, the inquiry must be directed to the beneficiaries of the mortgage, and not to the nominal party, who was a trustee. While I should not have much difficulty in regard to the other parties who were active in procuring the mortgage, it does not appear to me sufficiently proven that the bank, which was one of the parties secured thereby, had notice that any assignment was expected to follow, and it being innocent of any fraud, I think it [the mortgage] is valid in so far as the indebtedness of the bank is concerned."

The view here indicated is sustained by the rulings on analogous questions. Thus in the case of In re Kahley, 2 Biss. 383, Fed. Cas. No. 7,593, it is held that a chattel mortgage on a stock of goods, authorizing the mortgagor to sell and replace them in such manner as he might determine, and use the proceeds as he sees fit, is void as to such goods as the power of sale relates to; but, as the mortgage covered fixtures and other things, over which no power of sale had been given, the mortgage as to those things was held valid.

Again, where it is held that a chattel mortgage is void if the mortgagor has not the title to the property therein described, yet if he has title to a part of the property described, the mortgage will be valid as to this property. Pettis v. Kellogg, 7 Cush. 456.

There is not, and cannot be, a question in this case as to the application of section 8759, How. Ann. St., which prohibits preferences in general assignments. Warner v. Littlefield, 89 Mich. 331, 50 N. W. 721; Clark's Appeal, 100 Mich. 448, 59 N. W. 150. Nor can it be claimed that the fact that the amount of the debts which were set out in the chattel mortgage as due to A. Livingston, R. Livingston, and Daniel Goldstein, which were more than the amount actually due, because of the goods which had been previously sold them, and

which should have gone as a credit thereon, would make, of itself, the entire mortgage void. The reason for not entering these credits is attempted to be explained by the parties, but, even if unexplained, could not have the effect of making invalid the entire mortgage, although it might be a badge of fraud as against these three parties.

It is insisted that, although the mortgage is not invalid, the court was in error in not submitting the question of the fraudulent intention of the mortgagors and these three creditors to the jury, because, if the security for those debts was declared invalid, the plaintiffs in error would get the benefit of their pro rata, and subject the share coming to them to their judgment. It was shown that the expenses of the various litigations had been very large, and that, with the sum which had been paid to the Michigan National Bank before the institution of the garnishee proceedings, would only leave $5,300 in the hands of the trustee, which would be entirely insufficient to fully pay the six valid debts. Therefore there was no error in not submitting the question, unless the plaintiffs in error were entitled, under the writ of garnishment, to the pro rata which would be coming to the two Livingstons and Goldstein. We think they are not entitled to this. By the terms of the mortgage the valid debts were entitled to be paid in full if the estate was sufficient. The language is that "with the residue and remainder, he shall next pay in full the following claims and demands hereinbefore mentioned, if sufficient there shall be." This $5,300 is in fact entirely insufficient to pay these six valid debts. As between the secured creditors, there was no obligation, direct or implied, that the respective creditors should only get such share of the estate as would come to them if all of the debts were as specified in the mortgage, or if all of them were valid. On the contrary, we suppose that, if there had been credits on any or all of the debts which had not been entered, or if it turned out that some of the debts had been paid, the other creditors would be entitled to the increased share which these credits or these paid debts would give them in the event the estate was not sufficient to pay in full.

Whether or not the other beneficiaries under the mortgage are entitled to this pro rata cannot be determined in this proceeding, in which only the trustee is a party. Besides this defect of parties, the record shows that there was another judgment creditor whose writ of garnishment was executed on the trustee at the same time as that of the plaintiffs in error, and who, if they are entitled, would be equally entitled to a portion of this pro rata.

The case of Heineman v. Schloss, 83 Mich. 154, 47 N. W. 107, only goes to the extent of deciding that, when a chattel mortgage is entirely void because of fraud, the mortgagee or trustee holds the proceeds of the property taken, and which has been sold by him, subject to be reached by a writ of garnishment, as assets belonging to the principal debtor, and that there was no need, after the amendment of 1889, to go into equity to reach such assets; but this decision cannot apply when the chattel mortgage is not entirely void, or where there are conflicting claims to the assets.

We conclude that there was no error in the instruction of the

court and the finding of the jury, and the judgment as originally entered.

In regard to the costs and expenses allowed by the amended judgment, if the court had a discretion to allow these costs and expenses, this court could not review the amount allowed. Canter v. Insurance Co., 3 Pet. 307; Fabrics Co. v. Smith, 100 U. S. 110. But it is insisted that section 8098 of the Michigan Statutes did not give the court the right to allow any of the costs and expenses which were given under the amended judgment. That section is as follows:

"If the garnishee shall appear and make disclosure, as before provided, he shall be allowed his costs for trial and attendance as in case of a witness, and such further sum as the court shall think reasonable for his counsel fees and other necessary expenses; and in case he shall be adjudged liable, the same may be taxed and deducted from the property or money in his hands, and he shall be chargeable only for the balance, and if the garnishee shall be discharged, whether by reason of his having no money or property, or because the plaintiff shall not recover judgment against the principal defendant, or for any cause, his said costs and charges shall be paid by the plaintiff, and the garnishee may have the same taxed, and judgment and execution therefor."

The supreme court of Michigan had the construction of this section under advisement in the recent case of Wolcott v. Circuit Judge, 65 N. W. 286, and there determined that section 8089, being construed with section 8073, did not include cases where there was an issue made between a creditor and a garnishee, and a trial had thereon, but applied only when there was no issue framed and trial had. This decision has been rendered since the amended judgment was entered, but, as it is a construction of a Michigan statute, it is binding upon this court. It was error, therefore, to have entered the amended judgment.

It is ordered that, if the defendant in error will, within 30 days after the entry of this order, file in the circuit court of the United States for the Western district of Michigan, Southern division, a remittitur of so much of its judgment as by the amendment relates to special costs and expenses, and produce and file a certified copy thereof in this court, the original judgment will be affirmed; but, if this is not done within the time aforesaid, then the judgment below will be reversed, with directions to set aside the amended judgment for costs and expenses, and affirm the original judgment. The plaintiffs in error will recover costs in this cause.